Timothy Graulich
James I. McClammy
Adam L. Shpeen
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 15** |
| **ENNIA Caribe Holding N.V., *et al.*,**[1] | **Case No. 18- 12908 (___)** |
| | **(Joint Administration Pending)** |
| **Debtors in a Foreign Proceeding.** | |

**FOREIGN REPRESENTATIVE'S PETITION FOR AN ORDER GRANTING**
**RECOGNITION OF A FOREIGN PROCEEDING**

---

[1] The debtors in the Chapter 15 Cases (as defined below), along with each debtor's trade register number, are:  ENNIA Caribe Holding N.V. (trade register number 63986) ("**ECH**"), EC Holding N.V. (trade register number 138313) ("**EC Holding**"), ENNIA Caribe Leven N.V. (trade register number 36875) ("**ECL**"), ENNIA Caribe Zorg N.V. (trade register number 51811) ("**ECZ**"), ENNIA Caribe Schade N.V. (trade register number 63987) ("**ECS**") and EC Investments B.V. (trade register number 99988) ("**ECI**," and, together with ECH, EC Holding, ECL, ECZ and ECS, the "**ENNIA Group**" or "**Debtors**").  The mailing address of the lead debtor in the Chapter 15 Cases, ECH, is John B. Gorsiraweg 6, Willemstad, Curaçao.

R.M. Hermans, Ph.D., LL.M., M.Sc. (the "**Foreign Representative**") is the duly appointed foreign representative of ECH and each of the other above-captioned Debtors that are subject to the application of *noodregeling* (which means "emergency regulations") ("**Emergency Regulations**") in Curaçao pursuant to Article 60 of the *Landsverordening Toezicht Verzekeringsbedrijf* (which means "National Ordinance on the Supervision of the Insurance Industry") (the "**LTV**") by orders of the Court of First Instance of Curaçao (the "**Curaçao Court**," and the proceedings of the Debtors under the Emergency Regulations pursuant to such orders, the "**Foreign Proceeding**").  The Foreign Representative, on behalf of the Debtors, hereby moves this Court for the entry, pursuant to sections 105(a), 1509(b), 1515, 1517 and 1520(a) of title 11 of the United States Code, 11 U.S.C. sections 101, *et seq.* (the "**Bankruptcy Code**"), of a final order (the "**Proposed Order**") (i) granting the petitions in the above-captioned chapter 15 cases (collectively, the "**Chapter 15 Cases**") and recognizing the Foreign Proceeding as a foreign main proceeding (or, in the alternative, as a foreign nonmain proceeding) pursuant to section 1517 of the Bankruptcy Code, (ii) recognizing the Foreign Representative as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the Foreign Proceeding, and entrusting him with the administration of the Debtors' assets within the territorial jurisdiction of the United States and (iii) granting such other and further relief as this Court deems just and proper.  In support of this motion (this "**Motion**"), the Foreign Representative refers this Court to the statements contained in (a) the *Declaration of R.M. Hermans* (the "**Foreign Representative Declaration**") and (b) the *Declaration of Sabine Altena* (the "**Curaçao Counsel Declaration**"), which were filed concurrently herewith and are incorporated

2

herein by reference.  In further support of the relief requested herein, the Foreign

Representative respectfully represents:

## Preliminary Statement

1.      The Debtors are part of ENNIA Caribe ("**ENNIA**"), the largest insurance

company in Curaçao and St. Maarten, with offices in Curaçao, St. Maarten, Aruba and

Bonaire.[2]  While over 20 legal entities comprise ENNIA, the six Debtor entities directly

operate almost all aspects of the insurance business of ENNIA.[3]  ENNIA has been in

operation for approximately 70 years and offers a wide variety of products, including life

insurance, casualty insurance, health insurance and pensions.  Because of its scale,

ENNIA is a systemically important insurer in Curaçao and St. Maarten.  ENNIA's total

assets[4] constitute approximately 50% of the total assets of the insurance sector of

Curaçao and St. Maarten, and the value of such assets is equal to approximately 25% of

the annual gross domestic product of Curaçao and St. Maarten combined.  The

government pension scheme in Curaçao (other than for civil servants) is limited to

approximately $450 per month, which means that ENNIA is, to a large extent,

responsible for the provision of pensions in Curaçao (other than for civil servants).  Many

such pension holders are elderly or otherwise unable to work and rely on pension

---

[2] The Kingdom of the Netherlands consists of four autonomous countries: the Netherlands, Curaçao, St. Maarten and Aruba.  Bonaire is a special municipality within the country of the Netherlands. The Foreign Proceeding was commenced in connection with the joint regulation of insurance companies in Curaçao and St. Maarten.  Accordingly, the discussion below focuses on Curaçao and St. Maarten rather than Aruba and Bonaire.

[3] Many of the non-Debtor entities are dormant or engage in limited commercial activities, including holding a local bank that is not integrated into the insurance activities, holding certain assets and operating foreign branches of the insurance business.  The Debtors therefore represent the significant majority of the current financial and commercial interests of ENNIA.

[4] The value of such assets is as reported in the most recent financial statements of ENNIA.

payments as their primary or sole source of income.  In short, the failure of ENNIA would be catastrophic for the people of Curaçao and St. Maarten.

2.      ENNIA has been subject to regulatory action by the Central Bank of Curaçao and St. Maarten (the "**CBCS**") since at least 2014 due to serious concerns about its solvency and general financial condition.  The CBCS initially sent letters requiring corrective action and subsequently appointed a "silent trustee"[5] to oversee the governing boards of the Debtors directly regulated by the CBCS when its instructions were not followed.  During the past several years, ENNIA's financial condition has continued to deteriorate, and the CBCS is currently investigating the causes of the Debtors' solvency difficulties.[6]

3.      In early July 2018, the CBCS (a) exercised its authority to withdraw the permits held by Debtors ECL, ECS and ECZ, which such Debtors were required to hold pursuant to the LTV to conduct an insurance business in Curaçao and St. Maarten, and (b) petitioned the Curaçao Court to initiate Emergency Regulations to turn control of all of the Debtors' operations over to the CBCS so that the CBCS could stabilize the Debtors finances, curtail deterioration of the Debtors' solvency and restructure the Debtors' operations, with the goal of safeguarding ENNIA's status as a going concern and avoiding liquidation proceedings.  As described in further detail below, the Curaçao Court granted the relief that the CBCS had requested, commencing the rehabilitation

---

[5] Pursuant to the terms of the appointment of the silent trustee, the boards of the directly regulated Debtors were only permitted to act with the concurrence of the silent trustee.

[6] The CBCS believes that factors contributing to the deterioration of ENNIA's financial situation may include improper valuations of the Debtors' assets, improper payments of dividends and other forms of financial mismanagement.  The CBCS's investigation remains ongoing.

4

proceedings that the Foreign Representative seeks to have recognized in these Chapter 15

Cases.

4.      These Chapter 15 Cases are critical to ensuring that ENNIA will have

access to liquidity necessary to pay its obligations as they come due so that it can

continue as a going concern, preserving and restoring the Debtors' solvency and

advancing the Debtors' restructuring efforts.  The Debtors maintain bank accounts in

New York that contain cash and securities valued at approximately $287 million, which

accounts the Debtors have historically used to fund their operations in the ordinary course.

Recognition of the Foreign Proceeding will aid the Debtors in maintaining continued

access to these accounts, without which the Debtors will be at risk of failing to fulfill

their obligations to insured parties and otherwise maintain their operations during the

course of their restructuring.  Furthermore, the Foreign Representative may seek to

investigate and pursue valuable causes of action on behalf of the Debtors against parties

located in the United States whose actions and mismanagement contributed to ENNIA's

financial decline.  Recognition of the Foreign Proceeding will also aid the Debtors in

investigating and pursuing such potential causes of action.

**<u>Background and Jurisdiction</u>**

5.      On July 4, 2018 and, with respect to EC Holding, July 6, 2018 (the

"**Restructuring Commencement Date**"), the Foreign Proceeding was commenced as to

each of the Debtors as described in the Foreign Representative Declaration.

6.      On the date hereof, the Foreign Representative commenced the Chapter 15

Cases by filing petitions for recognition of the Foreign Proceeding (the "**Petitions for**

**Recognition**") with the United States Bankruptcy Court for the Southern District of New

5

York (this "**Court**").  Additional information about the nature of the Debtors' businesses

and the Debtors' corporate structure can be found in the Foreign Representative

Declaration.

7.      This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. §§ 1334, 1501 and Standing Order M-61 Referring to Bankruptcy Judges for

the Southern District of New York Any and All Proceedings Under Title 11, dated

July 10, 1984 (Ward, Acting C.J.), as amended by Standing Order M-431, dated February

1, 2012 (Preska, C.J.).

8.      The Chapter 15 Cases have been properly commenced pursuant to section

1504 of the Bankruptcy Code by the filing of the Petitions for Recognition pursuant to

section 1515 of the Bankruptcy Code.

9.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P) and may be

determined by this Court.  Venue is proper before this Court pursuant to 28 U.S.C.

§ 1410(1) or, in the alternative, 28 U.S.C. § 1410(3).

### Relief Requested

10.     By this motion (this "**Motion**"), the Foreign Representative, on behalf of

the Debtors, seeks entry of the Proposed Order, in the form attached hereto as Exhibit A,

(i) granting the Motion and recognizing the Foreign Proceeding as a foreign main

proceeding (or, in the alternative, as a foreign nonmain proceeding) pursuant to section

1517 of title 11 of the United States Code (such title, the "**Bankruptcy Code**"),

(ii) recognizing the Foreign Representative as the "foreign representative," as defined in

section 101(24) of the Bankruptcy Code, in respect of the Foreign Proceeding, and

entrusting him with the administration of the Debtors' assets within the territorial

6

jurisdiction of the United States and (iii) granting such other and further relief as this

Court deems just and proper.

### Basis for Relief

**A.    This Court Has Jurisdiction to Recognize the Foreign Proceeding and Grant the Relief Requested**

11.    This Court has jurisdiction to hear and determine cases commenced under

the Bankruptcy Code and all core proceedings arising thereunder pursuant to 28 U.S.C.

§§ 157 and 1334 and section 1501 of the Bankruptcy Code, as well as the Amended

Standing Order of Reference from the United States District Court for the Southern

District of New York.  Recognition of a foreign proceeding and other matters under

chapter 15 of the Bankruptcy Code are core proceedings under 28 U.S.C. § 157(b)(2)(P).

12.    Venue is proper in this district.  The Debtors' principal assets in the

United States are in New York.  First, accounts located in New York that are held in the

name of Debtors ECI, ECH and ECL with the investment firm Merrill Lynch, Pierce,

Fenner & Smith Inc., which is headquartered in New York, contain cash in the amount of

approximately $117 million and securities valued at approximately $170 million.  Such

assets constitute the Debtors' principal assets in the United States.  Therefore, venue is

proper in the Southern District of New York pursuant to 28 U.S.C. § 1410(1).

13.    Second, each of the Debtors has an interest in certain funds deposited with

Davis Polk & Wardwell LLP ("**Davis Polk**") as a retainer for its services in connection

with the Chapter 15 Cases, which funds are held in a client trust account in New York,

New York.  Foreign Rep. Decl. ¶ 16.  *See In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361,

373-74 (Bankr. S.D.N.Y. 2014) (finding that the debtor "had property in the United

States in the form of a retainer [, which] is sufficient to satisfy the requirements of section

7

109(a) of the Bankruptcy Code" and that "the Foreign Representatives acted in good faith

in transferring the funds to the Client Trust Account" to serve as a retainer); *In re Ocean

Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (citing a retainer held by New

York counsel in a New York account as a factor satisfying section 109(a) of the

Bankruptcy Code and establishing venue); *In re Suntech Power Holdings Co.*, 520 B.R.

399, 416 (Bankr. S.D.N.Y. 2014) (holding that establishing a deposit account in New

York "had the effect of establishing a basis for venue in [the Southern District of New

York] under 28 U.S.C. § 1410(1)"); *In re U.S. Steel Canada Inc.*, No. 17-11519 (Bankr.

S.D.N.Y. June 29, 2017) (granting recognition of a case where the foreign representative

had cited the presence of a retainer in New York as the basis for venue).  Therefore,

venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1410(1).

14.      Furthermore, venue in this district is consistent with the interests of justice

and the convenience of the parties.  The Debtors are not aware that they are party to any

litigation in the United States, so the provisions of 28 U.S.C. § 1410(2) do not appear to

be applicable here.  The assets located in New York that are referenced above are

particularly significant because the Debtors require continued access to such assets in

order to fund their operations in the ordinary course, and the Debtors seek to ensure such

continued access in part through these proceedings.  Finally, the Foreign Representative's

counsel, Davis Polk, is located in New York.  The Foreign Representative therefore

believes that the convenience of the parties in interest and the interests of justice will best

be served by establishing venue in this district.  Accordingly, and in the alternative, it is

submitted that venue in this district is proper pursuant to 28 U.S.C. § 1410(3).

### B.      The Foreign Proceeding Should Be Recognized

8

15.     Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States court in connection with a foreign proceeding.   11 U.S.C. § 1501(b)(1).  These Chapter 15 Cases are proper under chapter 15 of the Bankruptcy Code because (a) they concern a "foreign proceeding," (b) they were commenced by the Foreign Representative, who is a duly authorized "foreign representative," (c) the Petitions for Recognition and all required supporting documentation were properly filed, and (d) the relief sought by the Petitions for Recognition is consistent with the objectives of chapter 15.

### *1.     The Foreign Proceeding is a "Foreign Proceeding" under the Bankruptcy Code*

16.     The question of whether a proceeding commenced by application of Emergency Regulations under the LTV constitutes a foreign proceeding appears to be a question of first impression before this or any other U.S. bankruptcy court.  However, Curaçao law is derived from, similar to and interrelated with Dutch law,[7] and the Foreign Proceeding is similar in character to a Dutch suspension of payments proceeding (*surseance van betaling*), as described in the Curaçao Counsel Declaration.  This Court has previously held that a Dutch suspension of payments proceeding is a "foreign proceeding" as defined in section 101(23) of the Bankruptcy Code. *See In re Grupo Isolux Corsán, S.A.*, No. 16-12202 (Bankr. S.D.N.Y. Nov. 17, 2016).  Given the similarities between such Dutch proceeding and the Foreign Proceeding, it should be

---

[7] Specifically, as described in the Curaçao Counsel Declaration, under the principle of concordance (*concordantiebeginsel*), legislation and case law shall be similarly arranged, to the extent possible, in all of the constituent countries of the Kingdom of the Netherlands, including Curaçao and the Netherlands.  *See* Curaçao Counsel Declaration ¶ 12 n.7.

unsurprising that the Foreign Proceeding meets all the elements of the definition of a

"foreign proceeding" under the Bankruptcy Code.

17.    Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as

"a collective judicial or administrative proceeding in a foreign country, including an

interim proceeding, under a law relating to insolvency or the adjustment of debt in which

proceeding the assets and affairs of the debtor are subject to control or supervision by a

foreign court, for the purpose of reorganization or liquidation."  The Foreign Proceeding

meets each element of this definition because (a) it is a proceeding that is (b) either

judicial or administrative in character, including an interim proceeding, (c) collective in

nature, (d) in a foreign country, (e) authorized or conducted under a law related to

insolvency or the adjustment of debts, (f) in which the debtor's assets and affairs are

subject to the control or supervision of a foreign court (g) for the purpose of

reorganization or liquidation.  Each of these elements is addressed separately below.

### *(a)    The Foreign Proceeding is a Proceeding*

18.    The hallmark of a "proceeding" is a "statutory framework that constrains a

company's actions and that regulates the final distribution of a company's assets" and

includes "acts and formalities set down in law so that courts, merchants and creditors can

know them in advance, and apply them evenly in practice." *In re Betcorp Ltd.*, 400 B.R.

266, 277-78 (Bankr. D. Nev. 2009).  The Foreign Proceeding is governed by the statutory

framework set forth in the Articles 60-73 of the LTV.  As described in more detail in the

Curaçao Counsel Declaration, the LTV provides for a restructuring proceeding

specifically tailored for insurance companies.  Such a proceeding is similar to a

suspensions of payments proceeding under Dutch law, and the application of Emergency

10

Regulations under the LTV is similar to an emergency regulation proceeding
(*noodregeling*) in a Dutch Act (*Wet op het financieel toezicht*, which means "Act on
financial supervision").

19.    The LTV specifies that, upon application of the Emergency Regulations to
an insurance company by order of a court, the CBCS is granted broad authority to
exercise the powers of that company's board of directors, supervisory board or
representative, as applicable.  *See* Exh. A, Curaçao Counsel Decl.; LTV Art. 63(1).  The
LTV also specifies that a court may only grant CBCS such authority for the limited
purpose of restructuring the insurance company's business, or transferring or liquidating
the company's insurance portfolio.  *See Id.*; LTV Art. 60(2).  The CBCS is also required
to act for the benefit of the company's creditors as a collective in taking such actions.
*See Id.*; LTV Art. 63(2).  The LTV does not allow the CBCS to liquidate the company
under the Emergency Regulations, but instead requires the CBCS to initiate separate
proceedings under a well-recognized type of liquidation scheme if the applicable
insurer's equity capital is negative and the purposes of the Emergency Regulations can no
longer be realized or have been realized.  The Foreign Proceeding is therefore a
"proceeding" because the LTV falls squarely within the type of specific statutory
framework described in the case law.  *See, e.g.*, *Betcorp*, 400 B.R. at 277-78.

### (b)    The Foreign Proceeding is Judicial or Administrative in Character, Including an Interim Proceeding

20.    A proceeding that is at times administrative in character and at times
judicial in character satisfies this element of the definition of a foreign proceeding.  *See*
*In re ABC Learning Centres Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010), *aff'd*, 728
F.3d 301 (3d Cir. 2013).  A proceeding is administrative where a non-judicial party

11

performs tasks such as managing assets and conducting investigations, while a

proceeding is judicial when a court exercises its supervisory powers. *See Id.* Here, the

ongoing operation of the Debtors' business under the authority granted to the CBCS is

administrative in character and the Curaçao Court's application of the Emergency

Regulations to the Debtors is judicial in character. The Foreign Proceeding therefore

satisfies this element of the definition because it is partially administrative and partially

judicial in character, similar to the proceeding in *ABC Learning*, 445 B.R. at 328.[8]

### *(c)    The Foreign Proceeding is Collective in Nature*

21.    A proceeding is "collective" if it considers the rights and obligations of all

creditors. *See ABC Learning*, 445 B.R. at 328. As noted above, the LTV specifically

requires the CBCS to act in the interest of creditors as a collective. *See* Exh. A, Curaçao

Counsel Decl.; LTV Art. 63(2) ("The [CBCS] shall look after the interests of the joint

creditors."). Furthermore, the LTV prohibits CBCS from causing a company subject to

Emergency Regulations to engage in transactions affecting the rights of only a portion of

---

[8] The Foreign Proceeding can also be shown to satisfy this element on the basis that it is an "interim proceeding" with respect to a different proceeding that has already been found by this Court to be a "foreign proceeding." This is because the Bankruptcy Code specifically "includ[es] an interim proceeding" in the definition of a "foreign proceeding." Here, the Foreign Proceeding may be characterized as an interim proceeding to a liquidation under the 1931 Bankruptcy Decree of the Netherlands Antilles (the "**Curaçao Liquidation Law**"). The LTV provides that proceedings under the Emergency Regulations must be converted to a bankruptcy liquidation proceeding under Curaçao Liquidation Law if a reorganization cannot be achieved. *See* Exh. A, Curaçao Counsel Decl.; LTV Art. 71(1). The commencement of proceedings under Curaçao Liquidation Law is deemed to be retroactive to the time of the application of the Emergency Regulations upon such a conversion. *See Id.*; LTV Art. 71(4)(a). As further described in the Curaçao Counsel Declaration, Curaçao Liquidation Law is directly analogous to, and modelled after, the Dutch Insolvency Act (*Faillissementswet*). This Court has previously held that a proceeding under the Dutch Insolvency Act is a "foreign proceeding" as defined in section 101(23) of the Bankruptcy Code. *See* Order Granting Verified Petition for Recognition Under Chapter 15 and for Additional Relief Under 11 U.S.C. § 1521 [ECF No. 12], at 2, *In re Upper Deck Int'l B.V.*, No. 12-14294 (Bankr. S.D.N.Y. Nov. 20, 2012). Given that a liquidation under the Curaçao Liquidation Law is a foreign proceeding, and the Foreign Proceeding is an interim proceeding to a liquidation under the Curaçao Liquidation Law, the Foreign Proceeding itself must be a foreign proceeding under the definition in the Bankruptcy Code.

the creditors that would leave the remaining creditors in a less favorable position than would be the case in a liquidation.  *See Id.*; LTV Art. 68 ("Any transfer of rights and obligations pursuant to this chapter shall not prejudice the rights of the remaining creditors.").  The Foreign Proceeding is therefore a collective proceeding.

22.     In addition, the fact that a proceeding may later be converted to a liquidation for the collective benefit of creditors supports a finding that a proceeding is collective.  *See In re British Am. Ins. Co.*, 425 B.R. 884, 903 (Bankr. S.D. Fla. 2010) (finding that a limited restructuring followed by a winding up process where general unsecured creditors would be the residual beneficiaries of the company was a collective proceeding).  Here, if a restructuring is not feasible, the Foreign Proceeding must be converted into a bankruptcy liquidation under Curaçao Liquidation Law, which is directly analogous to, and modelled after, the Dutch Insolvency Act (*Faillissementswet*), as described in the Curaçao Counsel Declaration.  A proceeding under the Dutch Insolvency Act has been recognized as a type of collective proceeding.  *See, e.g., In re Upper Deck Int'l B.V.*, No. 12-14294 (Bankr. S.D.N.Y. Nov. 20, 2012).  This conversion feature, which is central to the Foreign Proceeding, lends additional support the contention that the Foreign Proceeding is a collective proceeding.

### *(d)     The Foreign Proceeding is Located in a Foreign Country*

23.     The Emergency Regulations were imposed by a court in Curaçao.  The power to act as the board of directors, supervisory board or representative, of the Debtors is held by the Central Bank of Curaçao and St. Maarten, which is located in Curaçao.  As described in the Foreign Representative Declaration, the Debtors' governance functions,

management and operations are all run out of Curaçao.  There can be no doubt that the

Foreign Proceeding is located in the foreign country of Curaçao.

### (e)    The Foreign Proceeding is Authorized or Conducted Under a Law Related to Insolvency or the Adjustment of Debts

24.    As noted above, Foreign Proceeding is similar to a Dutch suspension of

payments, which is recognized as a proceeding authorized or conducted under a law

related to insolvency or the adjustment of debts.  *See In re Grupo Isolux Corsán, S.A.*, No.

16-12202 (Bankr. S.D.N.Y. Nov. 17, 2016).  The LTV also contains numerous provisions

that address corporate insolvency and the adjustment of debt, which was noted as a

hallmark of an applicable law in *ABC Learning*.  *See ABC Learning*, 445 B.R. at 328

(holding that the relevant statute was applicable where it contains "numerous

subsections" that addressed "corporate insolvency and the adjustment of corporate debt.").

Examples include LTV Articles 60(2), 66, 70, 71(1) and 71(4)(a).  *See* Exh. A, Curaçao

Counsel Decl.; LTV Art. 60(2) (authorizing the CBCS to "liquidate all or part of the

insurer's portfolio"); LTV Art. 66 (specifying that certain provisions for the suspension

of payments in the 1931 Bankruptcy Decree of the Netherlands Antilles apply *mutatis

mutandis* to the Emergency Regulations, including provisions for set-off, treatment of

contracts (e.g., rental contracts, hire-purchase contracts and employment contracts), and

the satisfaction of claims against the insurer after the application of Emergency

Regulations); LTV Art. 70 (specifying that "[f]or [certain purposes] the legal status of an

insurer during the period the emergency regulations apply to said insurer, shall be

deemed to be identical to bankruptcy"); LTV Art. 71(1) (requiring the CBCS to initiate

proceedings under Curaçao Liquidation Law if "it becomes apparent that the insurer's

equity capital is negative and either the objective to be achieved through the emergency

regulations has been realized or no longer can be realized"); LTV Art. 71(4)(a)

(providing that, if insolvency proceedings are initiated, "the date on which the periods

referred to in articles 39 and 41 of the 1931 Bankruptcy Decree commence, shall be

calculated as from the date on which the decision with regard to the emergency

regulations became effective").  The Foreign Proceeding is therefore a proceeding

authorized or conducted under a law related to insolvency or the adjustment of debts.

### (f)    Under the Foreign Proceeding, The Debtors' Assets and Affairs are Subject to the Control or Supervision of a Foreign Court

25.    "[T]he requirement that the debtor's assets be subject to the control and

supervision of a foreign court does not require that the foreign proceedings play out

entirely in a judicial context like cases under the Bankruptcy Code. The ability of a party

to ask for court assistance concerning the proceeding is sufficient to satisfy this element."

8 Collier on Bankruptcy ¶ 1501.03 (16th ed. 2018).  Here, the Curaçao Court plays

several important roles in supervising the Foreign Proceeding.[9]

26.    The Curaçao Court initiated and set the terms of the Foreign Proceeding.

The Curaçao Court ordered the commencement of the Foreign Proceedings, after a

---

[9] Notably, regulatory proceedings with significantly less court involvement than the Foreign Proceeding have been recognized as foreign proceedings by this and other courts.  *See, e.g., Armada (Singapore) Pte Ltd. V. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129, 137-38 (S.D.N.Y. 2012) (holding that India's Board for Industrial and Financial Reconstruction (BIFR), an administrative board which (i) had powers similar to a court in India, (ii) oversaw the potential rehabilitation of the debtors under its authority in the way that U.S. bankruptcy courts oversee Ch. 11 cases, and (iii) was required to seek approval from the High Court of India prior to ordering the winding up of the company, met the definition of "foreign court"); *In re Betcorp*, 400 B.R. 266, 275 (Bankr. D. Nev. 2009) (reasoning that the Australian Securities and Investments Commission, which regulated publicly traded entities including the debtor, could be a "foreign court" under Section 1502, while noting that proceedings were also subject to supervision by the Australian courts under the relevant Corporations Act); *In re Tradex Swiss AG*, 384 B.R. 34, 42 (Bankr. D. Mass. 2008) (finding that the Swiss Federal Banking Commission met the definition under Section 1502 because it controlled and supervised the liquidation of entities in the brokerage trade business, including debtor, even though a decree of the Commission was not subject to appeal to the Swiss courts).

hearing on notice, as required under the LTV, and determined which of the various actions listed under Article 60(1)(2) of the LTV (consisting of liquidating insurance portfolios, transferring rights and liabilities under insurance contracts, and restructuring the insurer) to authorize in the Foreign Proceeding (in this case, it authorized all three). The Curaçao Court appointed CBCS to oversee the Foreign Proceedings.  The Curaçao Court was also authorized to inspect the books and records of the Debtors if necessary in making these determinations.  *See* Exh. A, Curaçao Counsel Decl.; LTV Art. 60(6)-(7).

27.    The Curaçao Court exercises judicial oversight with respect to whether CBCS's actions are within the scope of the authority granted to it by the LTV and Curaçao Court.  The Curaçao Court has the power to withdraw the Emergency Regulations, ending the Foreign Proceeding.  The LTV also requires the CBCS to convert the Foreign Proceeding to bankruptcy liquidation proceedings under Curaçao Liquidation Law, which are subject to additional court procedures, if a reorganization cannot be achieved.  The amount of costs that the CBCS may charge to the Debtors under the Emergency Regulations is subject to approval of the Curaçao Court under Article 69 of the LTV.

28.    Lastly, Curaçao law provides additional, procedural protections for parties with interests affected by the Foreign Proceeding.  Curaçao's Code of Civil Procedure grants third parties the right to oppose any judgment affecting their interests under certain circumstances.  Specifically, interested third parties may oppose a judgement if they were not summoned to appear before the court, did not in fact appear before the court (regardless of whether they were summoned) and were not made a party to the proceeding through joinder or judicial intervention.  *See* Curaçao Counsel Dec. ¶ 24.

16

29.    Therefore, the Debtors' assets and affairs are subject to the control or supervision of a foreign court.

### (g)    *The Foreign Proceeding is for the Purpose of Reorganization or Liquidation of the Debtors.*

30.    Courts typically look to the express purpose of the proceedings under the applicable statute to determine whether a foreign proceeding is for the purpose of reorganization or liquidation of the debtors.  *See ABC Learning*, 445 B.R. at 332.  Accordingly, this element is usually self-evident and is rarely disputed.  *See* 8 Collier on Bankruptcy ¶ 1501.03 (16th ed. 2018).  Such is the case here, where Article 60 of the LTV expressly states that the purpose of the ER is for reorganization or liquidation.  *See* Exh. A, Curaçao Counsel Decl.; LTV Art. 60(2) ("When ordering the emergency regulations the Court shall authorize the Bank to: (a) liquidate all or part of the insurer's portfolio; (b) transfer all or part of the rights and liabilities resulting from or pursuant to any insurance contracts; or (c) restructure the business of the insurer.").

### 2.    *R.M. Hermans is a Proper "Foreign Representative"*

31.    Section 101(24) of the Bankruptcy Code defines "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."

32.    R.M. Hermans is an individual person.  As described in the Foreign Representative Declaration, he has been validly authorized and empowered in accordance with the applicable laws of Curaçao by the Debtors to act as foreign representative in the Chapter 15 Cases.  Certified copies of the documents appointing R.M. Hermans as the attorney-in-fact of each of the Debtors for the purpose of acting as its foreign

17

representative and commencing the Chapter 15 Cases are attached to the Foreign

Representative Declaration as <u>Exhibit C</u>.

33.     It is not necessary for a foreign representative to be approved by a foreign

court or administrative body.  Rather, it is sufficient that a foreign representative be

appointed "in the context of a foreign bankruptcy proceeding," such as where a foreign

representative is "appointed by a corporation engaged in a foreign bankruptcy

proceeding."  *Ad Hoc Grp. of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro,*

*S.A.B. de C.V.)*, 470 B.R. 408, 412 (N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012),

*cert. dismissed*, 133 S. Ct. 1862 (2013).  Courts in this District have recognized foreign

representatives who have similarly been appointed by companies subject to a foreign

proceeding.  *See, e.g.*, *In re OAS S.A.*, 533 B.R. 83, 90 (Bankr. S.D.N.Y. 2015) (holding

that a foreign representative was properly authorized by resolutions and powers of

attorney from boards of directors of debtors); *In re Perforadora Oro Negro, S. de R.L. de*

*C.V.*, No. 18-1109 (Bankr. S.D.N.Y. May 17, 2018) (granting recognition to a Mexican

proceeding where the debtor authorized appointment of the foreign representative by

means of a broad power of attorney); *In re Grupo Isolux Corsán, S.A.*, No. 16-12202

(Bankr. S.D.N.Y. Nov. 17, 2016); (granting recognition to a Dutch proceeding where the

Dutch debtor authorized appointment of the Dutch foreign representative by means of a

broad power of attorney).

34.     Similarly to the situations in the Mexican reorganization process in *Vitro*,

the Brazilian proceeding in *OAS* and the Dutch proceeding in *Isolux*, the LTV does not

provide for a Curaçao court to appoint a foreign representative because administration of

the debtor has been turned over to the CBCS.  As described in the Foreign Representative

Declaration, R.M. Hermans was appointed as the foreign representative of each of the

Debtors, each acting pursuant to resolutions that were duly executed by the CBCS, acting

under the authority granted to it by the Curaçao Court to exclusively exercise all powers

of the board of directors, supervisory board or representative, as applicable, of each of the

Debtors.  Therefore, R.M. Hermans is a proper "foreign representative" within the

meaning of section 101(24) of the Bankruptcy Code and for purposes of chapter 15 of the

Bankruptcy Code.

### 3.    *The Foreign Representative Properly Filed the Chapter 15 Cases*

35.    These Chapter 15 Cases were duly and properly commenced as required

by section 1504 of the Bankruptcy Code by filing the Petitions for Recognition pursuant

to section 1515(a) of the Bankruptcy Code.  The Petition was accompanied by all

documents and information required by subsections 1515(b) and (c) of the Bankruptcy

Code.  Because the Foreign Representative has satisfied the requirements set forth in

section 1515 of the Bankruptcy Code, these Chapter 15 Cases have been properly

commenced.

### C.    The Foreign Proceeding Is a "Foreign Main Proceeding"

36.    Section 1517(b)(1) of the Bankruptcy Code provides that a foreign

proceeding shall be recognized as a "foreign main proceeding" if it is pending in the

country where the debtor has its center of main interests ("**COMI**") as of the date of the

petition for recognition.  *See, e.g.*, *In re Fairfield Sentry Ltd.*, 714 F.3d 127 (2d Cir. 2013)

(affirming recognition of foreign main proceeding); *In re Ocean Rig UDW Inc.*, 570 B.R.

687, 705 (Bankr. S.D.N.Y. 2017) (recognizing foreign main proceeding); *In re Suntech

Power Holdings Co.*, 520 B.R. 399, 416–17 (Bankr. S.D.N.Y. 2014) (same).  Absent

evidence to the contrary, a debtor's registered office is presumed to its COMI. 11 U.S.C.

§ 1516(c). *See also In re Bear Stearns High-Grade Structured Credit Strategies Master

Fund, Ltd.*, 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007), *aff'd,* 389 B.R. 325 (S.D.N.Y.

2008). Each of the Debtors is organized under the laws of, and maintains its registered

office in, Curaçao, creating a presumption that Curaçao is the COMI for each of the

Debtors. *See* 11 U.S.C. § 1516(c).

37.     Although this presumption that Curaçao is the COMI of the Debtors is

rebuttable, here other relevant factors to be considered also point to Curaçao.

Specifically, courts consider a variety of factors including "the location of the debtor's

headquarters," "the location of the debtor's primary assets," "the location of the majority

of the debtor's creditors or of a majority of the creditors who would be affected by the

case" and "the jurisdiction whose law would apply to most disputes." *In re Fairfield

Sentry Ltd.*, 714 F.3d at 137 (quoting *In re SphinX, Ltd.*, 351 B.R. 103, 117 (Bankr.

S.D.N.Y 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)). As described in the Foreign

Representative Declaration, substantially all of Debtors' operations including their

headquarters, management and senior staff are in Curaçao. Moreover, substantially all of

the Debtors' corporate governance is directed from Curaçao and certain key strategic,

operating and policy decisions are made in Curaçao. *In re Fairfield Sentry Ltd.*, 440 B.R.

60, 64 (Bankr S.D.N.Y. 2010), *aff'd*, 2011 U.S. Dist. LEXIS 105770 (S.D.N.Y. Sept. 15,

2011). These factors all point to Curaçao as the appropriate COMI jurisdiction.

38.     Another important factor in determining the COMI of a Debtor is the

"expectations of its creditors." *In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169,

225 (Bankr. S.D.N.Y. 2017); *see also Bear Stearns*, 374 B.R. at 130 (holding that the

debtors' COMI was "the place where the [debtors] conduct the administration of their

interests on a regular basis and is therefore ascertainable by third parties"). The Debtors'

creditors are primarily holders of insurance policies, pensions and other products issued

in Curaçao, St. Maarten, Aruba and Bonaire, with the Debtors' business particularly

concentrated in Curaçao and St. Maarten. The majority of these creditors transacted

business with the Debtors in Curaçao and are familiar with ENNIA as a company with

longstanding operations in Curaçao. The expectations of the holders of these products

weigh heavily in favor of Curaçao as the COMI of the Debtors.

     39.    In addition, the following factors all point toward Curaçao as the COMI

for the Debtors:

    i.    substantially all of the Debtors' operations are managed and directed from an office in the city of Willemstad, Curaçao;

    ii.    substantially all corporate governance for the Debtors is directed from Willemstad, Curaçao;

    iii.    the shareholder of each Debtor is a legal entity incorporated in Curaçao and that has its registered office in Curaçao;

    iv.    substantially all strategic and key operating decisions and key policy decisions for the Debtors are currently being made by the CBCS, which is located in Willemstad, Curaçao;

    v.    substantially all capital expenditure decisions affecting the Debtors are managed in Willemstad, Curaçao;

    vi.    substantially all of the Debtors' corporate accounting, accounts payable, accounts receivable, internal auditing, marketing, treasury, real estate, research and development and tax services are provided from Willemstad, Curaçao;

    vii.    substantially all of the Debtors' finance, legal, human resources, and payroll services are carried out in Willemstad, Curaçao; and

    viii.    substantially all of the Debtors' cash management functions are directed from Willemstad, Curaçao.

40.     As set forth above, each of the requirements of sections 1517(a) and

1517(b)(1) of the Bankruptcy Code have been satisfied, and thus the Foreign

Representative respectfully submits that the Petitions for Recognition should be granted

and the Foreign Proceeding should be recognized as a "foreign main proceeding."

### D.     In the Alternative, the Foreign Proceeding Is a "Foreign Nonmain Proceeding"

41.     Sections 1502(5) and 1517(b)(2) of the Bankruptcy Code provide that a

foreign proceeding shall be recognized as a "foreign nonmain proceeding" if it is pending

in the country where the debtor has an "establishment."  An "establishment" is "any place

of operations where the debtor carries out nontransitory economic activity."  11 U.S.C.

§ 1502(2).

42.     In addition to the centralized operations discussed above, the Debtors also

have many long-established retail establishments where they offer insurance and benefits

products to the public throughout Curaçao.  There can be no doubt that the Debtors have

establishments in Curaçao.

43.     As set forth above, each of the requirements of sections 1517(a) and

1517(b)(2) of the Bankruptcy Code have been satisfied, and thus the Foreign

Representative respectfully submits that the Petitions for Recognition should be granted

and the Foreign Proceeding should be recognized at least as a "foreign nonmain

proceeding," as an alternative to recognition as a "foreign main proceeding."

### E.     Recognition of the Foreign Proceeding Would Not Be Manifestly Contrary to Public Policy

44.     As set forth above, the Petitions for Recognition meet the standard for

recognition set forth in section 1517 of the Bankruptcy Code. Further, the

commencement of the Foreign Proceeding was authorized by the Curaçao Court pursuant

to a carefully crafted statute, the LTV, which is designed to both protect the collective

interests of a debtor's creditors and give effect to Curaçao's significant sovereign interest

in regulating the insurance industry within the country.

45.    Curaçao's framework for regulating insurance companies within its

jurisdiction is similar to regulations governing insurance companies in the United States,

both in terms of structure and policy goals.  Specifically, in the United States, regulation

of insurance companies is governed by state law.  As described by the National

Association of Insurance Commissioners, state law typically provides for a graduated

approach to troubled insurance companies where state regulators initially monitor at-risk

companies, are authorized to take direct measures as financial difficulties become more

acute (such as mandating changes to management or operations, entering into reinsurance

transactions or seizing assets), and may eventually place a troubled insurance company

into receivership, in which the state's insurance commissioner typically acts as the

receiver.  NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS, TROUBLED

COMPANIES AND RECEIVERSHIP (2018).  *See, e.g.*, N.Y. Insurance Law §§ 7402, 7404

(providing that the Superintendent may apply for an order directing him to rehabilitate or

liquidate a [New York State] insurer upon a wide range of grounds related to financial

and operational issues); 18 Del. C. §§ 5905-06 (providing that the Commissioner may

apply to the court for an order appointing the Commissioner as receiver of a [State of

Delaware] insurer and directing the Commissioner to rehabilitate or liquidate such insurer

upon a wide range of grounds).  Accordingly, both Curaçao law and state law within the

United States grant officials broad powers to attempt to restructure a troubled insurance
company while avoiding the need for a liquidation, if practicable.

46.     Recognizing the Foreign Proceeding as part of Curaçao's carefully crafted
legal scheme to regulate the insurance industry within its own borders is entirely
congruent with the principle of comity that is "central to Chapter 15." *In re Vitro S.A.B.
de CV*, 701 F.3d 1031, 1043 (5th Cir. 2012).  Accordingly, the exception allowing a
bankruptcy court to refuse to grant relief under chapter 15 if the action "would be
manifestly contrary to the public policy of the United States" under section 1506 of the
Bankruptcy Code is inapplicable in this case.  The legislative history indicates that the
"public policy" exception is narrow, applying only to the "most fundamental policies of
the United States."  H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 109 (2005).  Courts
have similarly construed this free-floating public policy exception narrowly.  *See Rede
Energia*, 515 B.R. at 92 ("[T]he public policy exception is clearly drafted in narrow terms
and 'the few reported cases that have analyzed [section] 1506 at length recognize that it is
to be applied sparingly.'") (citing *In re Toft*, 453 B.R. 186, 193 (Bankr. S.D.N.Y. 2011));
*Armada (Singapore) Pte Ltd. v. Shah* (*In re Ashapura Minechem Ltd.*), 480 B.R. 129, 139
(S.D.N.Y. 2012); *ABC Learning*, 445 B.R. at 335. Under this standard, "[t]he key
determination . . . is whether the procedures used [in the foreign proceeding] meet our
fundamental standards of fairness." *In re Rede Energia S.A.*, 515 B.R. 69, 91 (Bankr.
S.D.N.Y. 2014).  It is well established "that the relief granted in a foreign proceeding and
the relief available in the United States do not need to be identical." *Id. See also In re
Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010); *In re ABC
Learning Centres*, 728 F.3d 301, 309 (3d Cir. 2013).

47.    Here, the Foreign Proceeding is consistent with the public policy of the

United States.  As described above, the LTV provides for a process that ensures fair

treatment of creditors.  The CBCS is required under Curaçao Law to act for the benefit of

the Debtors' creditors as a collective, is constrained by the requirement that specified

transactions leave creditors in at least as favorable a position as a liquidation and, if the

Debtors cannot be reorganized, is required to initiate liquidation proceedings under a type

of liquidation scheme closely aligned with a liquidation scheme that has previously been

recognized as an accepted type of foreign proceeding, with the effective date of the

liquidation proceedings relating back to the commencement of the Foreign Proceedings.

The Foreign Proceeding is also part of the Curaçao government's efforts to regulate a

systemically important insurer within its borders, with assets comprising

approximately 25% of gross domestic product and on which the population relies for

a significant portion of the private pensions in the country, under the same principles

as insurance regulation within the United States.

48.    In addition, the relief requested here would foster cooperation between

courts in Curaçao and the United States, which is a paramount and statutorily recognized

goal of proceedings under chapter 15 of the Bankruptcy Code. 11 U.S. Code § 1501

(noting that the "objectives" of chapter 15 include "cooperation between courts of the

United States [and other United States parties] and the courts and other competent

authorities of foreign countries involved in cross-border insolvency cases").  For instance,

by granting the relief requested here, this Court would be assisting the Curaçao Court in

the orderly administration of the Debtors' assets by recognizing that the Curaçao Court

has entrusted the CBCS with the administration of the Debtors, which includes the

Debtors' rights with respect to their assets located within the United States.  This recognition is essential to the CBCS's efforts to reorganize the Debtors and avoid a liquidation, for the benefit of all of the Debtors' creditors, as well as the financial and social well-being of the people of Curaçao and St. Maarten, as described in the Foreign Representative Declaration.

49.    For these reasons, the Foreign Proceeding is patently fair and comports with the United States' standards of fundamental fairness and with United States public policy.  Accordingly, the relief requested herein should be granted.

### Notice

50.    The Debtors have served notice of this Motion on (i) all persons or bodies authorized to administer foreign proceedings of the Debtors, (ii) the Office of the United States Trustee for the Southern District of New York, (iii) all other parties that request notice in the Chapter 15 Cases as of the date of such service, and (iv) all other parties that this Court may direct.

51.    The Foreign Representative requests that this Court grant this Motion without any further notice.  The Foreign Representative proposes to notify creditors and parties in interest of the filing of the Petitions for Recognition and the Foreign Representative's request for entry of an order recognizing the Foreign Proceeding as a foreign main proceeding in the form and manner set forth in the *Foreign Representative's Motion for an Order Scheduling Hearing and Specifying the Form and Manner of Service of Notice*, filed contemporaneously herewith.  In light of the nature of the relief requested herein, the Foreign Representative submits that no other or further notice of this Motion is necessary or required.

## **No Previous Request**

52.    No previous request for the relief sought herein has been made by the

Foreign Representative or the Debtors to this or any other court.

WHEREFORE, the Foreign Representative respectfully requests that this

Court grant the relief requested herein and such other and further relief as is just and

proper.

Dated:    New York, New York
          September 25, 2018


By:    */s/ Timothy Graulich*                    
       Timothy Graulich
       James I. McClammy
       Adam L. Shpeen
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800

*Counsel to the Foreign Representative*

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 15 |
| **ENNIA Caribe Holding N.V.,** *et al.*,[1] | Case No. 18- 12908 (___) |
|  | **(Jointly Administered)** |
| **Debtors in a Foreign Proceeding.** |  |

## ORDER GRANTING (I) RECOGNITION OF FOREIGN MAIN PROCEEDING AND (II) RECOGNITION OF FOREIGN REPRESENTATIVE

Upon the motion (the "**Motion**")[2] of R.M. Hermans, Ph.D., LL.M., M.Sc. (the

"**Foreign Representative**") in the above-captioned chapter 15 cases (the "**Chapter 15**

**Cases**") in respect of the above-captioned debtors (collectively, the "**Debtors**") that are

subject to the application of *noodregeling* ("emergency regulations") ("**Emergency**

**Regulations**") in Curaçao pursuant to Article 60 of the *Landsverordening Toezicht*

*Verzekeringsbedrijf* ("National Ordinance on the Supervision of the Insurance Industry")

(the "**LTV**") by orders of the Court of First Instance of Curaçao (the "**Curaçao Court**,"

and the proceedings of the Debtors under the Emergency Regulations pursuant to such

orders, the "**Foreign Proceeding**") for entry of an order (this "**Order**"), pursuant to

---

[1] The debtors in the Chapter 15 Cases (as defined below), along with each debtor's trade register number, are:  ENNIA Caribe Holding N.V. (trade register number 63986) ("**ECH**"), EC Holding N.V. (trade register number 138313) ("**EC Holding**"), ENNIA Caribe Leven N.V. (trade register number 36875) ("**ECL**"), ENNIA Caribe Zorg N.V. (trade register number 51811) ("**ECZ**"), ENNIA Caribe Schade N.V. (trade register number 63987) ("**ECS**") and EC Investments B.V. (trade register number 99988) ("**ECI**," and, together with ECH, EC Holding, ECL, ECZ and ECS, the "**ENNIA Group**" or "**Debtors**").  The mailing address of the lead debtor in the Chapter 15 Cases, ECH, is John B. Gorsiraweg 6, Willemstad, Curaçao.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

sections 105(a), 1509(b), 1515, 1517 and 1520(a) of title 11 of the United States Code (as

amended from time to time, the "**Bankruptcy Code**") (i) granting the Petitions for

Recognition in the Chapter 15 Cases and recognizing the Foreign Proceeding as a foreign

main proceeding (or, in the alternative, a foreign nonmain proceeding) pursuant to

section 1517 of the Bankruptcy Code; (ii) recognizing that the Foreign Representative is

the duly appointed foreign representative of the Debtors within the meaning of section

101(24) of the Bankruptcy Code and is authorized to act on behalf of the Debtors in the

Chapter 15 Cases; and (iii) granting such other and further relief as this Court deems just

and proper; and upon consideration of the Foreign Representative Declaration and the

Curaçao Counsel Declaration, filed in support of the Debtors' Petitions for Recognition;

and this Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.), as amended by Standing Order

M-431, dated February 1, 2012 (Preska, C.J.); and consideration of the Motion and the

requested relief being a core proceeding this Court can determine pursuant to 28 U.S.C.

§ 157(b)(2)(P); and due and proper notice of the Motion and Hearing having been

provided to (a) all persons or bodies authorized to administer foreign proceedings of the

Debtors, (b) the Office of the United States Trustee for the Southern District of New

York, (c) all other parties that request notice in the Chapter 15 Cases as of the date of

such service, and (d) all other parties that this Court may direct and it appearing that no

other or further notice need be provided; and this Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein;

2

and upon all of the proceedings had before this Court and after due deliberation and

sufficient cause appearing therefor,

THIS COURT HEREBY FINDS AND DETERMINES THAT:

A.      The findings and conclusions set forth herein constitute this Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following

findings of fact constitute conclusions of law, they are adopted as such.  To the extent any

of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334 and section 1501 of the Bankruptcy Code, as well as the Amended

Standing Order of Reference from the United States District Court for the Southern

District of New York dated as of January 31, 2012.  This is a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(P).  Venue for this proceeding is proper before this Court pursuant

to 28 U.S.C. § 1410.

C.      The Foreign Representative is the duly appointed "foreign representative"

of each of the Debtors within the meaning of section 101(24) of the Bankruptcy Code.

D.      The Chapter 15 Cases were properly commenced pursuant to

sections 1504, 1509 and 1515 of the Bankruptcy Code.

E.      The Foreign Representative has satisfied the requirements of section 1515

of the Bankruptcy Code and Bankruptcy Rule 2002(q).

F.      The Foreign Proceeding is a "foreign proceeding" within the meaning of

section 101(23) of the Bankruptcy Code.

3

G.      The Foreign Proceeding is entitled to recognition by this Court pursuant to

section 1517 of the Bankruptcy Code.

H.      Curaçao is the center of main interests of the Debtors, and, accordingly,

the Foreign Proceeding is a "foreign main proceeding" within the meaning of section

1502(4) of the Bankruptcy Code and is entitled to recognition as a foreign main

proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

I.      The Foreign Representative and the Debtors, as applicable, are entitled to

all of the automatic relief available pursuant to section 1520 of the Bankruptcy Code,

without limitation.

J.      The relief granted herein will not cause undue hardship or inconvenience

to any party in interest and to the extent that any hardship or inconvenience may result to

such parties, it is outweighed by the benefits of the requested relief to the Debtors, their

estates and their creditors.

K.      The relief granted herein is necessary and appropriate, in the interests of

the public and international comity, consistent with the public policy of the United States,

and warranted pursuant to sections 105(a), 1509(b), 1515, 1517 and 1520(a) of the

Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted as set forth herein.

2.      The Foreign Proceeding is granted recognition as a foreign main

proceeding pursuant to section 1517 of the Bankruptcy Code.

3.      The Foreign Representative is the duly appointed foreign representative of the Debtors within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Debtors in the Chapter 15 Cases.

4.      All relief afforded to a foreign main proceeding and foreign representative pursuant to section 1520 of the Bankruptcy Code is hereby granted to the Foreign Proceeding and Foreign Representative.  The Foreign Representative is hereby established as the exclusive representative of the Debtors with full authority to administer the Debtors' assets and affairs in the United States.  All parties in possession of any Debtor's property within the United States are authorized and directed to honor direction from the Foreign Representative with respect to such property as direction from the applicable Debtor pursuant to section 1520(a)(3) of the Bankruptcy Code.  Such parties may rely on this Order in honoring the Foreign Representative's instructions as the instructions of the applicable Debtor with respect to such property and shall not be liable to any party on account of such reliance.

5.      Subject to sections 1520 of the Bankruptcy Code, the Foreign Proceeding and all orders of the Curaçao Court shall be granted comity in the United States.

6.      All objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court at the Hearing, or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits.

7.      The Debtors and each of their respective successors, agents, representatives, advisors and counsel shall be entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code.

5

8.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) this Order shall be effective immediately and enforceable upon entry; (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Foreign Representative is authorized and empowered, and may in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

10.     This Court shall retain jurisdiction with respect to any and all matters arising from or relating to the interpretation or implementation of this Order.


Dated: New York, New York

_____, 2018


_____
UNITED STATES BANKRUPTCY JUDGE