**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 15** |
| **ENNIA Caribe Holding N.V.,** *et al.*,[1] | **Case No. 18-12908 (___)** |
| **Debtors in a Foreign Proceeding.** | **(Joint Administration Pending)** |

## DECLARATION OF SABINE ALTENA

I, Sabine Altena, LL.M., Esq., a partner at OX & WOLF legal partners B.V. ("**Ox & Wolf**"), a law firm located in Curaçao,[2] and a lawyer admitted to the practice of law in Curaçao, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1.      Each of the Debtors in the above-captioned chapter 15 cases (the "**Chapter 15 Cases**") are subject to the application of *noodregeling* (which means "emergency regulations") (the "**Emergency Regulations**" or "**ER**") in Curaçao pursuant to Article 60 of the *Landsverordening Toezicht Verzekeringsbedrijf* (which means "National Ordinance on the Supervision of the Insurance Industry") (the "**LTV**") by orders of the Court of First Instance of Curaçao (the "**Curaçao Court**," and proceedings

---

[1] The debtors in the Chapter 15 Cases (as defined below), along with each debtor's trade register number, are:  ENNIA Caribe Holding N.V. (trade register number 63986) ("**ECH**"), EC Holding N.V. (trade register number 138313) ("**EC Holding**"), ENNIA Caribe Leven N.V. (trade register number 36875) ("**ECL**"), ENNIA Caribe Zorg N.V. (trade register number 51811) ("**ECZ**"), ENNIA Caribe Schade N.V. (trade register number 63987) ("**ECS**") and EC Investments B.V. (trade register number 99988) ("**ECI**," and, together with ECH, EC Holding, ECL, ECZ and ECS, the "**ENNIA Group**" or "**Debtors**").  The mailing address of the lead debtor in the Chapter 15 Cases, ECH, is John B. Gorsiraweg 6, Willemstad, Curaçao.

[2] Curaçao is a Lesser Antilles island located north of the Venezuelan coast.  Together with St. Maarten, Aruba and the Netherlands, Curaçao is one of the four constituent countries of the Kingdom of the Netherlands.

of the Debtors under the Emergency Regulations pursuant to such orders, the "**Foreign Proceeding**").

2.      I submit this declaration in support of the *Foreign Representative's Petition for an Order Granting Recognition of a Foreign Proceeding* (the "**Motion**") filed contemporaneously herewith, which seeks entry of an order pursuant to sections 105(a), 1509(b), 1515, 1517 and 1520(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), (i) granting the petitions in the Chapter 15 Cases and recognizing the Foreign Proceeding as a foreign main proceeding (or, in the alternative, as a foreign nonmain proceeding) pursuant to section 1517 of the Bankruptcy Code, (ii) recognizing the foreign representative, R.M. Hermans, Ph.D., LL.M., M.Sc., as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the Foreign Proceeding, and entrusting him with the administration of the Debtors' assets within the territorial jurisdiction of the United States, and (iii) granting such other and further relief as this Court deems just and proper.

### Background and Qualifications

3.      I am a partner at the law firm Ox & Wolf.

4.      Pertinent aspects of my education and qualifications are set forth herein. In 1992, I earned a degree in pre-University Secondary Education from Titus Brandsma College, located in the Netherlands.  I studied law at the University of Groningen, also in the Netherlands, and earned my law degree in 1997.  I began my legal career in 1998 at the Dutch law firm of De Brauw Blackstone Westbroek N.V. ("**De Brauw**"), and left De Brauw in 2008 to start practicing law in Curaçao.  I was admitted to practice law in

Curaçao in 2008.[3]  I have focused my Curaçao practice on corporate law, with a particular emphasis on investment management, corporate governance, equity structuring and regulatory and banking matters.

5.      In addition to my activities at Ox & Wolf, I am a guest lecturer on corporate law at the University of Curaçao, a member of the supervisory board of Onderlingehulp N.V., a funeral insurance company in Curaçao, Aruba and Bonaire and, until recently, was a board member of the Curaçao International Financial Services Association ("**CIFA**").  As a board member of CIFA, I advised government and regulatory agencies, as well as monetary authorities, on issues concerning the international financial services sector of Curaçao, including the development of new legislation, products and services for the sector.

6.      I have been recognized as a leader in my practice area by *Chambers & Partners*.  I am a recognized expert in regulatory and banking matters, and frequently handle transactional and commercial contract matters.  Articles I have authored include: (i) *The Constitutional Reforms of the Netherlands Antilles and the Consequences for Financial Supervision*, published in the Financial Legal Series of the Netherlands Institute for the Banking, Insurance and Securities Industry ("**NIBE-SVV**"), (ii) *Supervision on Financial Entities in the Dutch Caribbean (Aruba, Curaçao, Sint Maarten and the BES)*, pending publication in the Financial Legal Series of NIBE-SVV, and (iii) *The (Im)possibilities of the Curaçao Trust*, published in the Magazine for Antillean Law (TAR).  I am fully familiar with Curaçao law and the Foreign Proceeding.

---

[3] Specifically, I was sworn in by the Joint Court of Justice of Aruba, Curaçao, Sint Maarten and of Bonaire, Sint Eustatius and Saba High Court on June 10, 2008.

7.      I have been advising the Central Bank of Curaçao and St. Maarten (the
"**CBCS**") on all Curaçao legal aspects of the Foreign Proceeding since April 2018.  On
July 3, 2018, the CBCS submitted a request to the Curaçao Court for an order providing
for the application of Emergency Regulations to all of the Debtors except EC Holding.
On July 4, 2018, the Curaçao Court held a hearing regarding the CBCS's request at
which members of the board of directors of, and counsel to, the ENNIA Group appeared
and were heard.  On July 4, 2018, the Curaçao Court entered an order providing for the
application of Emergency Regulations to all of the Debtors except EC Holding.  On July
6, 2018, the CBCS submitted a request to the Curaçao Court for an order providing for
the application of Emergency Regulations to EC Holding.  On July 6, 2018, the Curaçao
Court entered an order providing for the application of Emergency Regulations to EC
Holding.

8.      To assist this Court's consideration of the Motion, I submit this
declaration to describe the relevant aspects of the bankruptcy and reorganization process
of insurance companies under Curaçao law.

## Reorganization under the LTV and ER

### A.  Summary and Purpose of the LTV and ER

9.      In certain circumstances, the LTV governs the financial restructuring of
Curaçao insurance companies.  The LTV is a comprehensive statutory framework
regulating the insurance industry in Curaçao.  For reference, a certified English
translation of the applicable chapters of the LTV is attached hereto as Exhibit A.  The
purpose of the LTV is to protect the interests of insured parties and other parties entitled
to insurance payments, each of which is a creditor of the insurance companies.  In
extraordinary cases, the LTV protects these creditors of the insurer (most importantly, the

insureds) through application of the ER, which is a statutory regime codified in Articles 59-73 of the LTV.[4]

10.     The ER is a restructuring proceeding that is applied, if so ordered by a Curaçao court, only to insurance companies in Curaçao.  A comparable regime for emergency regulations applies to Curaçao banks.  Like the LTV more generally, the ER in particular promotes the overriding goal of protecting the interests of insured parties.  Because insured parties stand to incur significant losses from liquidation of insurers under the ordinary rules of bankruptcy, such insured parties have an interest in the continuation of insurance policies, as opposed to termination thereof and receipt of a share of the liquidated estate.  Accordingly, the ER is a special suspension of payments proceeding under Curaçao law akin to a similar proceeding under Dutch law.[5]

11.     The ER also provides the option to transfer rights and liabilities out of existing insurance contracts to other (acquiring) insurers.  Importantly, however, any transfer of rights and obligations under the ER cannot prejudice the rights of remaining creditors (*i.e.*, parties that remain creditors of the initial insurer).[6]

---

[4] The LTV and ER protect parties entitled to life insurance payments and non-life insurance payments, including payments due to losses from accidents, and pension payments.

[5] The LTV's ER provisions derive from the emergency regulations (*noodregeling*) in the Dutch Insurance Industry Supervision Act (*Wet toezicht verzekeringsbedrijf*).  The Dutch Insurance Industry Supervision Act is one of the predecessors of the Dutch Financial Supervision Act (*Wet op het financieel toezicht*).  Under the Dutch Financial Supervision Act, a comparable proceeding for emergency regulations (*noodregeling*) applies to Dutch insurance companies and similarly suspends payments in special circumstances to protect insured parties.  The ER is also comparable to the provisions for suspension of payments (*surseance van betaling*) in the 1931 Bankruptcy Decree of the Netherlands Antilles, which is an insolvency proceeding aimed at restructuring companies more generally (*i.e.*, not just insurers).  The 1931 Bankruptcy Decree of the Netherlands Antilles is derived from the Dutch Bankruptcy Code.

[6] This rule reinforces the principle that the ER protects creditors' interests, in particular in the event of liquidation.  Accordingly, the transfer of assets together with the insurance portfolio to the acquiring insurer should not be for an amount that leaves remaining creditors in a worse position upon liquidation had no such transfer occurred.

12.     In general, the LTV and the ER apply only to insurers.  However, the

Supreme Court of the Netherlands has ruled that a court can order emergency regulations

with respect to non-regulated entities (*i.e.*, non-insurers) if the non-regulated entities

together with the regulated ones (*i.e.*, the insurers) in fact conduct the insurance

business.[7]

13.     Although not part of the 1931 Bankruptcy Decree of the Netherlands

Antilles, which codifies bankruptcy law applicable to companies in Curaçao, the LTV

cross-references bankruptcy law and, as explained below, contains provisions requiring

the debtor to file for bankruptcy under certain circumstances.  Additionally, pursuant to

the LTV, certain provisions for the suspension of payments in the 1931 Bankruptcy

Decree of the Netherlands Antilles apply *mutatis mutandis* to the ER, including the

LTV's provisions for set-off under the ER, the treatment of contracts (*e.g.*, rental

contracts, hire-purchase contracts and employment contracts) under the ER, and the

satisfaction of claims to the insurer after entry of the ER.[8]  If formal bankruptcy

proceedings replace the ER, the bankruptcy, for the purposes of numerous provisions of

Curaçao bankruptcy law, is deemed to have already commenced as of the date on which

the Curaçao court granted the ER.  For example, actions taken by or on behalf of the

---

[7] Supreme Court 24 June 2005, ECLI:NL:HR:2005:AT6005.  Decisions of the Supreme Court of the Netherlands generally apply in Curaçao.  Specifically, according to the principle of concordance (*concordantiebeginsel*), the civil (procedural) law and the criminal (procedural) law of the Netherlands, Curaçao, St. Maarten and Aruba shall be similarly arranged, as much as possible.  In 1997, the Supreme Court of the Netherlands ruled that the principle of concordance applies not only to legislation, but also to case law and developments in the law.  Accordingly, developments in (case) law in the Netherlands also apply in Curaçao, St. Maarten and Aruba, unless there is a relevant difference in the societal views between the Netherlands, Curaçao, St. Maarten and Aruba.  *See* Supreme Court 14 February 1997, *NJ* 1999/409.

[8] *See* LTV Art. 66.  For example, with respect to set-off, creditors can set-off their claims on debts owed to the debtor if both the claim and debt came into existence before, or arose from a legal relationship existing before, the declaration of bankruptcy, except that the LTV provides that the commencement of the ER is the "reference point" to determine whether a debt arose before bankruptcy, rather than the declaration of bankruptcy itself.

6

CBCS during the ER period are deemed actions taken by the trustee in bankruptcy, and any debts incurred during the ER period are deemed debts of the estate in bankruptcy.[9] In effect, this timing rule makes the ER period the initial phase of the bankruptcy with respect to certain provisions.

14.     In a sense, the ER is an interim proceeding, because its goal is to protect the interests of the insurer's creditors prior to a formal declaration of bankruptcy. The ER also provides the moment in time and conditions upon which the bankruptcy proceeding replaces the ER. However, the ER is, in many ways, its own standalone restructuring proceeding. For example, the ER and bankruptcy are mutually exclusive and cannot occur simultaneously. Furthermore, the 1931 Bankruptcy Decree of the Netherlands Antilles provides two insolvency proceedings for legal entities: (i) bankruptcy, and (ii) the suspension of payments proceeding. However, the suspension of payments proceeding is not available for insurance companies and banks. Thus, the ER is generally deemed the equivalent of the suspension of payments for insurance companies and banks. The LTV also explicitly provides that when ordering the ER, a Curaçao court authorizes the CBCS to restructure the insurer's business, which demonstrates that the ER is an insolvency proceeding aimed at restructuring.

### B.  Brief Description of the ER Proceeding

15.     Under the LTV, the CBCS may petition a Curaçao court to enter Emergency Regulations against an insurance company supervised by the CBCS, following revocation of the insurer's license. The CBCS is responsible for maintaining the external stability of the Netherlands Antillean Guilder and it does so by defining and

---

[9] *See Id.* Art. 71. This provision of the LTV mirrors the provisions for suspension of payments in the 1931 Bankruptcy Decree of the Netherlands Antilles.

administering the monetary policy of, and supervising banks and insurers in, Curaçao and St. Maarten.[10]

16.     As a threshold matter, a Curaçao court will order the ER only if there is an urgent need for a "special provision" to protect the relevant insurer's creditors.  In other words, a Curaçao court must assess whether the ER is necessary to protect the interests of the creditors of the relevant insurer (*i.e.*, the debtor).  For example, the ER may be necessary when the insurance company structurally no longer meets the statutory solvency requirements set forth in the LTV (which, in practice, means the insurance company may not have enough capital to fulfill its obligations over time).  More importantly, the key consideration supporting application of the ER is that the interests of the insurer's creditors requires it.

17.     Before ordering the ER, a Curaçao court must provide both the debtor and the CBCS an opportunity to be heard or, at a minimum, the Curaçao court must duly summon the debtor and CBCS.  Additionally, a Curaçao court may inspect, or request that a third party inspect, the debtor's records.

18.     As indicated above, entry of the ER requires revocation of the debtor's license.  The debtor can appeal revocation of its license, but doing so does not suspend the hearing regarding the CBCS's petition for the ER.[11]  More generally, the debtor cannot appeal the Curaçao court's ruling on the ER.[12]  In the context of the ER proceedings, an appeal in cassation "in the interest of the law" ("*cassatie in het belang*

---

[10] As part of its supervisory tasks, the CBCS supervises the regulated companies within the ENNIA Group.

[11] *See Id.* Art. 60(7).

[12] *See Id.* Art. 60(9).

*der wet*") is possible, but it would not affect the validity of the Curaçao court's ruling on the ER.[13]

19.     If the Curaçao court grants CBCS's request, it must pronounce its decision in open court, and publish it in the official gazette (*i.e.*, the publication containing official government announcements).[14]

### C.  Powers and Responsibilities of the CBCS under the ER

20.     Upon application of the ER, CBCS is authorized to exercise, exclusively, all powers of the insurer's board of directors, the members of the supervisory board or the representative(s) of the insurer.[15]  Board members, supervisory board members or the insurer's representative(s) must fully cooperate with the CBCS during the period the CBCS exercises these powers.[16]  Additionally, the CBCS may authorize the board of directors to carry out specific tasks, and the CBCS can dismiss board members, members of the supervisory board or the representative(s) of the insurer on the insurer's behalf.[17]

---

[13] In general, cassation involves an appeal by one of the parties to the Supreme Court of the Netherlands for the purpose of clarifying the law.  However, cassation "in the interest of the law" is not available to the parties themselves, but may only be pursued by the Attorney General of the Supreme Court of the Netherlands (*i.e.*, when it is in the public interest to resolve a particular question of law, the Attorney General may lodge an appeal in cassation "in the interest of the law" to the Supreme Court).  Furthermore, the outcome of an appeal in cassation "in the interest of the law" does not affect the validity of the underlying judgment.  In other words, if the Supreme Court quashes a judgment "in the interest of the law," the rights and positions of the parties to that judgment remain unchanged—*i.e.*, the "losing" party is still the losing party, and the "winning" party remains successful.  Thus, cassation "in the interest of the law" only provides future (prospective) guidance on the legal question at issue and has no effect on the decision appealed.

[14] Here, the Curaçao Court published its decision on the same day it ordered the ER (*i.e.*, July 4, 2018), and it included the full text of the order for public review.

[15] *See Id.* Art. 63(1).  The CBCS may also authorize persons to exercise all or part of the powers granted to it under the ER.  If it does so, the CBCS must publish the name and address of any such person, as well as revocation of any power of attorney, in the official gazette.

[16] *See Id.* Art. 63(3).

[17] Although the CBCS assumes all powers and authority normally vested in the board, supervisory board and other legal representatives of the insurer, the directors, supervisory directors or insurer's representative(s) remain in office, unless they are replaced during the ER.  *See Id.* Art. 63(4), (5).

21.     Furthermore, the ER empowers the CBCS to (i) liquidate all or part of the insurer's portfolio, (ii) transfer all or part of the rights and liabilities resulting from or pursuant to any insurance contracts or (iii) restructure the insurer's business.[18]  And, so long as it does not appear to the CBCS that the debtor's equity capital is negative, the CBCS can liquidate and distribute the debtor's assets.

22.     However, if it becomes apparent that the debtor's equity capital is negative and the objective(s) pursued under the ER cannot be achieved, the CBCS must request for bankruptcy on behalf of the debtor.[19]  In such a case, the CBCS must file for bankruptcy of the debtor whether or not the insurer has ceased to make payments.[20]  Once bankruptcy is declared, the ER automatically ceases to be effective.

**D.  Protection of Creditors' and Shareholders' Rights under the ER**

23.     Importantly, in the exercise of its powers under the ER, the CBCS must protect the interests of the insurer's creditors.[21]  Indeed, the CBCS must safeguard creditors' interests even in petitioning for the ER in the first place, given that the ER is only applied if the interests of the insurer's creditors require it.  To ensure that the CBCS effectively protects creditors' interests, any decision reached by vote of the shareholders of the insurer requires CBCS approval to become effective.[22]  Moreover, if, at the general meeting of shareholders, shareholders refuse to adopt a shareholder resolution (as required for an action under the insurer's articles of incorporation), or if the resolution

---

[18] *See Id.* Art. 60(2).

[19] *See Id.* Art. 71(1).

[20] *See Id.* Art. 71(3).  By contrast, under Article 1 of the 1931 Bankruptcy Decree of the Netherlands Antilles, a declaration of bankruptcy requires that the debtor has ceased to make payments.

[21] *See Id.* Art. 63(2).

[22] *See Id.* Art. 63(6).

does not obtain the approval required under the insurer's articles of incorporation, the CBCS can adopt the resolution itself.[23]

24.      Lastly, Curaçao law provides additional, procedural protections for parties with interests affected by the ER.  Curaçao's Code of Civil Procedure grants third parties the right to oppose any judgment affecting their interests under certain circumstances. Specifically, interested third parties may oppose a judgment if they do not personally appear before a Curaçao court (and were not represented by counsel in the proceeding), or the persons they represent were not summoned to appear, and they were not made a party to the proceeding through joinder or judicial intervention.

### E.  Conclusion

25.      I have reviewed and been informed of the "foreign proceeding" and "foreign representative" requirements, necessary for recognition of a proceeding under chapter 15 of the Bankruptcy Code.

26.      Based upon my experience and understanding of the relevant laws of Curaçao, it is my belief that the Foreign Proceeding qualifies as a foreign proceeding "under a law relating to insolvency or adjustment of debt" pursuant to section 101(23) of the Bankruptcy Code.  Specifically:

- The Foreign Proceeding is a proceeding relating to bankruptcy and providing for restructuring of the debtor's estate.

- It is a special proceeding for insurance companies subject to the approval of the responsible Curaçao court and supervised by the CBCS.  A Curaçao court appoints the CBCS, and the Curaçao court exercises oversight over

---

[23] *See Id.* Art. 63(7).

CBCS activities by deciding whether to convert the ER into a formal
bankruptcy, and whether to withdraw the ER.[24]  The ER does not require
that the debtor is financially insolvent or has ceased to make payments as
they become due.  The Curaçao court also fixes the costs of the ER
incurred by the CBCS.[25]

- The Foreign Proceeding is a "collective" proceeding because it requires
the CBCS to act in the interests of all creditors.  In addition, the LTV
provides that any transfer of rights and obligations pursuant to the LTV
cannot prejudice the rights of remaining creditors.  The ER does not
provide a recovery to, nor does it authorize the CBCS to act on behalf of,
any particular creditor.

- Before entry of the ER, the debtor has a right to be heard in court.[26]

- The ER is part of a statutory framework (the LTV) that both constrains the
business acts and operations of debtors by, for example, enabling the
CBCS to exercise the powers of the debtor's board, and regulates the
liquidation and distribution of the debtor's assets (so long as the debtor
does not show negative equity capital).

- The debtor's assets and affairs are subject to the control and supervision of
the CBCS, within the boundaries of the LTV and ER and subject to
judicial oversight.

---

[24] *See Id.* Arts. 60-61, 71.

[25] *See Id.* Art. 69.

[26] *See Id.* Art. 60(6).

27.    Further, based on my experience and understanding of the relevant laws of Curaçao, it is my belief that R.M. Hermans qualifies as a foreign representative pursuant to section 101(24) of the Bankruptcy Code and has full authority to commence the Chapter 15 Cases and seek the relief requested.

28.    The Chapter 15 Cases are being filed in an effort to recover assets, restructure debts, and restore the solvency of the insurers within the ENNIA Group.

[INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury under the laws of the United States of America
that the foregoing is, to the best of my knowledge, information and belief, complete, true
and correct.

Executed on this __25th__ day of September, 2018
in Willemstad, Curaçao

/s/

Sabine Altena, LL.M., Esq.
OX & WOLF legal partners B.V.
Mercuriusstraat 24
Willemstad, Curaçao

## Exhibit A

**Certified English Translation of Chapters I, VII and VIII of the LTV**

## DECLARATION CERTIFYING ACCURACY OF TRANSLATION

I, A.J.B. Burrough, translator to Livewords B.V., pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am a professional translator appointed as a sworn translator by the Court of The Hague and have approximately 20 years of professional experience translating Dutch into English.

2. I have prepared the attached translation of selected Chapters I, VII and VIII from the "National Ordinance on the Supervision of the Insurance Industry", extracted from the .pdf documents available at http://www.centralbank.cw/local-insurance-companies-legislation and from the website http://decentrale.regelgeving.overheid.nl/cvdr/xhtmloutput/Actueel/Nederlandse%20 Antillen/2309.html, which to the best of my professional knowledge and belief is a true and accurate representation of the Dutch original also attached hereto.

I, A.J.B. Burrough, pursuant to 28 U.S.C. § 1746 declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:    21 September 2018
                Leiden, the
                Netherlands

**National Ordinance on the Supervision of the Insurance Industry**

| | |
|---|---|
| CHAPTER I | Introductory provisions |
| CHAPTER II | Admission to the insurance industry |
| | Section 1: General provisions |
| | Section 2: Provisions concerning insurers with their registered office in the Netherlands Antilles |
| | Section 3: Provisions concerning insurers with their registered office abroad |
| CHAPTER III | Conducting an insurance business |
| | Section 1: General provisions |
| | Section 2: Provisions relating to technical provisions |
| | Section 3: Provisions concerning the solvency margin of insurers with their registered office in the Netherlands Antilles |
| | Section 4: Additional provisions concerning insurers with their registered office abroad |
| CHAPTER IV | Transfer of rights and obligations arising from life insurance contracts |
| CHAPTER V | Transfer of rights and obligations arising from non-life insurance contracts |
| CHAPTER VI | Special measures |
| CHAPTER VII | Revocation of the licence |
| CHAPTER VIII | Emergency regulations and bankruptcy |
| CHAPTER IX | Special provisions |
| CHAPTER IXA | Orders subject to penalties, administrative fines, monetary debts and limitation period |
| | Section 1: Orders subject to penalties |
| | Section 2: Administrative fines |
| | Section 3: Monetary debts |
| | Section 4: Limitation period |
| CHAPTER IXB | Publication of violations |
| CHAPTER X | Transitional provisions |
| CHAPTER XII | Supervision, detection and punishment |
| CHAPTER XIIA | The funeral in kind insurer |
| CHAPTER XIII | Final provisions |

===

**CHAPTER I    Introductory provisions.**

Article 1

1. In this National Ordinance and the provisions based thereon, the following terms shall - unless stated otherwise - have the following meanings:

| | |
|---|---|
| a. life insurance contracts: | insurance contracts for the payment of monetary benefits in connection with the life or death of a human being, on the understanding that accident insurance contracts shall not be regarded as life insurance contracts; |
| b. non-life insurance contracts: | insurance contracts other than those relating to the life or death of a human being, on the understanding that |

|  |  |
|---|---|
|  | accident insurance contracts shall be regarded as non-life insurance contracts; |
| c. premium: | the monetary consideration payable by the policyholder pursuant to an insurance contract; |
| d. life insurance business: | entering into life insurance contracts as a business for own account, including the settlement of life insurance contracts entered into by that business, even where there is no intention to make a profit; |
| e. non-life insurance business: | entering into non-life insurance contracts as a business for own account, including the settlement of non-life insurance contracts entered into by that business, even where there is no intention to make a profit; |
| f. insurance business: | life insurance business or non-life insurance business; |
| g. insurer: | any person who carries out insurance business; |
| h. representative: | the person appointed by an insurer with its registered office abroad to represent the insurer in the Netherlands Antilles in exercising its powers and complying with the regulations that apply to it pursuant to this National Ordinance; |
| i. registered office: | the place where, according to its articles of association, a legal person is established; |
| j. establishment: | the registered office, agency or branch and any other permanent presence of an insurer in the territory of a State in the form of an organisation, managed by the insurer's own staff or by a person who is independent and authorised to conduct the insurance business on behalf of the insurer; * |
| k. financial statements: | the balance sheet and the profit and loss account of an insurer accompanied by the explanatory notes to these documents, both in the form in which they have been prepared by the board and in the form in which they have been adopted or approved by the competent body; |
| l. the Minister: | the Minister of Finance; |
| m. the Bank: | the Bank of Curacao and Sint Maarten; |
| n. the Joint Court : | the Joint Court of Justice of the Netherlands Antilles and Aruba; |
| o. the Court: | the Court of First Instance of the Netherlands Antilles; |
| p. funeral in kind insurer: | any person whose business is the entering into insurance contracts for own account for making benefits in kind in connection with a human death, including the settlement of the contracts involved, even if the purpose of the business is not to make a profit; |
| q. qualifying holding: | a direct or indirect holding of more than 10% of the nominal capital of an undertaking or institution, or any direct or indirect exercise of more than 10% of the voting rights in an undertaking or institution, or any comparable direct or indirect control over an undertaking or institution; |

| | |
|---|---|
| r. external expert: | an external expert as referred to in Article 121 of Book 2 of the Civil Code; |
| s. enforcement order: | a written order issued by the Bank for the purpose of enforcing payment of a monetary debt; |
| t. supervisory authority: | a public authority or a government-appointed authority responsible for the supervision of financial markets or legal persons, companies or natural persons operating on such markets, as well as a public authority or a government-appointed authority responsible for ensuring compliance with legal regulations to combat money laundering and the financing of terrorism. |

2. A life insurance business does not lose its qualification as such if, in addition to the obligation to distribute cash benefits, liabilities of another nature are accepted in life insurance contracts, or if liabilities are accepted in connection with incidents of which the occurrence is uncertain and which affect a human person.

Article 2
1. The supervision of the insurers, as ensuing from this National Ordinance, shall be the responsibility of the Bank.

2. An instruction for the Board of the Bank in respect of the exercise of its duties in implementing this National Ordinance shall be laid down in a national decree containing general measures.

3. Neither the members of the Supervisory Board, the president and the directors of the Bank nor the employees of the Bank may in any way be affiliated with or have any interest in any insurer other than pursuant to an insurance contract.

Article 3
Non-life insurance business is subdivided into the following loss groups:

a. Accident and health insurance;

b. Vehicle insurance;

c. Marine, transport and aviation insurance;

d. Insurance of fire damage and other damage to property;

e. Other non-life insurance.

Article 4
1. The Bank shall decide whether or not an act or a combination of acts constitutes the carrying on of life insurance business, non-life insurance business or another type of business, or whether or not an act or combination of acts constitutes the performance of insurance business from an establishment in Curacao. It shall take its decision either of its own motion or at the written request of the person who performs or intends to perform the act or combination of acts.

2. The Bank shall decide to which of the loss groups referred to in Article 3 a non-life insurance contract belongs. It shall decide either of its own motion or at the written request of the insurer who takes out or intends to take out the non-life insurance contract.

3. The Bank shall notify the person concerned of its decision taken pursuant to the paragraph (1) or (2) by registered letter.

4. If it emerges that the business of an insurance company is being performed without a licence, then, at the Bank's instruction and without prejudice to the provisions of Article 122, the business shall immediately cease to be performed and, under the supervision of the Bank, the act or acts taken shall, to the extent deemed possible by the Bank, be cancelled within a period to be set by the Bank. The Bank may, upon request, as yet grant a licence to carry on the business of a credit institution.

5. If the business of an insurance company is being performed without a licence by a company incorporated under Curaçao law, the Bank may, without prejudice to the provisions of Article 122, file an action for the dissolution of the company at the court of first instance if the company continues to carry on the insurance business after an instruction from the Bank as referred to paragraph (4). The declaration of dissolution shall be subject, mutatis mutandis, to the provisions in Title 1 of Book 2 of the Civil Code relating to the dissolution of a legal entity.

Article 5
Unless otherwise arising from this National Ordinance, this National Ordinance shall apply to:

a. insurers with their registered office in the Netherlands Antilles;

b. insurers with their registered office abroad as concerns the insurance business that they carry on from an establishment in the Netherlands Antilles.

Article 6
1. The following shall not be considered to be insurers:

a. the Social Insurance Bank;

b. funds established by or on behalf of the competent authority of the country or the island territory for the sole benefit of those who are or have been in the service of the authority and their relations.

2. The entering into or settlement of contracts referred to in Article 1(2) shall not be regarded as carrying on non-life insurance business.

3. With due observance of paragraph (4), the entering into or settlement of insurance contracts for own account by company pension funds as referred to in Article 1(1)(b)of the National Ordinance on Company Pension Funds [Landsverordening Ondernemingspensioenfondsen] (P.B. 1985, 44), which by virtue of that National Ordinance are subject to the supervision of the Bank, shall not be regarded as the conduct of insurance business.

4. The provisions of paragraph (3) shall apply only to the extent that a company pension fund acts to implement:

a. a pension commitment as referred to in Article 2 of the National Ordinance on Company Pension Funds;

b. a voluntary pension provision for a member of the company pension fund, provided that this provision fits within the framework of the regulation in force in the company pension fund for the category to which the member belongs to implement a commitment as referred to under a;

c. a regulation under which an existing pension provision for a member is voluntarily continued upon termination of the member's participation.

Article 7

1. By national decree containing general measures, categories of insurers may be designated to which this National Ordinance does not apply in full or in part. Such designation may be made subject to conditions and may be revoked.

2. The insurers referred to in paragraph (1) are obliged to comply, as well as to continue to comply, with the conditions laid down pursuant to the national decree referred to in paragraph (1).

===

**CHAPTER VII Revocation of the licence.**

Article 55

1. The Bank shall revoke the licence if:

a. the insurer requests the licence to be revoked. The Bank shall decide on such a request within 60 days of its receipt;

b. the insurer has been declared bankrupt or has been granted a suspension of payments;

c. the insurer has ceased to perform the life insurance business or has ceased to perform in the claim group concerned;

d. the insurer manifestly no longer meets the definition given in Article 1(g);

e. the insurer misuses or improperly uses the license;

f. the structure of the group to which the insurer belongs is changed in such a way that the Bank or the home country authority responsible for the supervision of insurers cannot exercise sufficiently adequate and effective supervision or consolidated supervision of the insurer; or

g. the insurer or one of the policy determining or co-policy determining persons of the insurer concerned fails to comply, or no longer complies, with the obligations imposed by or pursuant to this National Ordinance.

2. The Bank may revoke the licence if:

a. the information or documents submitted in order to obtain the license are incorrect or incomplete to such degree that a different decision would have been taken upon the request if the correct circumstances had been fully known at the time of the assessment of the request;

b. circumstances arise or facts come to light on the basis of which, if they had occurred or had been known before the time the licence was granted, the licence would have been refused;

c. one of the directors or the person who determines the insurer's day-to-day policy or who also determines the insurer's policy has been declared bankrupt or has been granted a suspension of payments;

d. the insurer has not actually commenced its business within a period to be determined by the Bank;

Article 56

1. A decision to revoke a licence or a refusal to revoke a licence shall state the reasons on which it is based and shall be served by the Bank on the insurer concerned by means of a bailiff's writ.

2. Revocation shall not take effect until the decision to that effect has become final.

3. The decision to revoke the licence and, if the Bank deems this necessary in the interests of the development and maintenance of a healthy insurance industry, the reasons for the revocation as well, shall be published digitally on the Bank's website as soon as possible after this decision has become final. If the Bank considers this to be in the interests of policyholders, insured persons or persons entitled to benefits, it may also publish the decision, as well as the reasons for the revocation referred to in the first sentence, in another manner to be determined by the Bank. The costs of the latter publication shall be borne by the insurer concerned.

4. The Bank may stay the publication referred to in the third paragraph until a time to be determined by the Bank, if the publication could cause serious damage to the interests of policyholders, insured persons or persons entitled to benefits.

5. The insurer that has lodged an objection or appeal against the Bank's refusal to revoke the licence, shall be obliged to continue its business in accordance with the generally binding regulations laid down by or pursuant to this National Ordinance, as well as the regulations and restrictions attached to the licence, pending the objection or appeal.

Article 57
The revocation of the licence shall oblige the insurer to unwind the part of its business concerned. In doing so, it shall remain subject to the provisions of this National Ordinance.

Article 58
1. If the Bank revokes a licence pursuant to Article 55(g), it shall limit the exercise of the insurer's authority to dispose of its assets or prohibit the insurer from disposing of these assets, unless it has given its written authorisation, to the extent that this has not already been done pursuant to Article 51(1) or Article 53(1).

2. The Bank shall notify the insurer of the restriction or prohibition imposed pursuant to the paragraph(1) with the decision to revoke the licence.

3. The Bank shall publish the restriction or prohibition imposed pursuant to paragraph(1), Article 51(1) or Article 53(1) in the notice referred to in the Article 56(1).

4. The Bank may invoke the invalidity of a legal act performed by the insurer in violation of the restriction or prohibition on behalf of the insurer. If the legal act was performed before the restriction or prohibition was published, the insurer or the Bank on behalf of the insurer may invoke the invalidity of the legal act if the counterparty was aware of the restriction or prohibition or could not have been unaware of it.

5. The Bank shall lift the restriction or prohibition imposed pursuant to paragraph(1) as soon as the decision to revoke the licence has been annulled.

===

**CHAPTER VIII Emergency regulations and bankruptcy**

**Article 59**

1. A claim or an application seeking the declaration of bankruptcy of an insurer - including an application by the insurer itself - shall not be taken into consideration as long as the insurer is in the possession of a licence as referred to in Article 9(a).

2. If all the licences of an insurer have been revoked, no decision shall be taken on the application or claim for a declaration of bankruptcy until after the court has given the Bank the opportunity to make known its opinions on the matter.

3. The statutory provisions in respect of suspension of payment do not apply to insurers.

**Article 60**

1. If the interest of the joint creditors of an insurer, whose licence has been revoked, requires a special measure, the Court may, on an application of the Bank, pronounce the emergency regulations.

2. On pronouncing the emergency regulations, the Court shall authorize the Bank to:
a. liquidate all or part of the insurer's portfolio;
b. transfer all or part of the rights and liabilities resulting from or pursuant to any insurance contracts; or
c. restructure the business of the insurer.
As long as it has not become apparent for the Bank that the insurer has negative equity capital, the authorization shall also relate to the liquidation of the assets of the insurer.

3. With regard to an insurer with its registered office abroad the authorization shall apply to the insurance business as conducted from the offices in the Netherlands Antilles.

4. The Court shall hold a public hearing to handle the Bank's application for ordering the emergency regulations with the utmost urgency and on the basis of the administration of justice in civil cases as far as this national ordinance does not deviate therefrom.

5. The Court has the authority to inspect, or cause to inspect, the books and records of the insurer. In such case Article 30 applies.

6. The Court shall not issue a decision until after the insurer and the Bank have been heard or at least have been duly summoned.

7. An appeal or objection filed by the insurer against the revocation of its license shall not suspend the trial on the application of the Bank for the pronouncement of the emergency regulations.

8. The Court's decision shall be furnished with reasons and if the Bank's application is granted, the decision shall be pronounced in open court. The clerk of the Court shall publish the substance of the decision in the publication for official government announcements.

9. No appeal shall be possible against the decision, save an appeal in cassation in the interest of the law.

**Article 61**

1. Where an application by the Bank to adopt the emergency regulations is pending concurrently with an application or claim for a declaration of bankruptcy, the trial on the application or the claim for a declaration of bankruptcy shall be suspended until a decision has been given on the Bank's application. If the Court pronounces the emergency regulations, the application or claim for a declaration of bankruptcy shall lapse by operation of law.

2. One of the consequences of pronouncing the emergency regulations is that the insurer can only be declared bankrupt in accordance with Article 71.

3. The Court may, at the request of the Bank, withdraw the emergency regulations. The clerk of the Court shall publish a notice of withdrawal in the publication for official government announcements.

**Article 62**
From the date on which the emergency regulations is pronounced, the assets referred to in Article 35 may not be supplemented by assets other than the premiums received since that time, or the assets obtained from such premiums in so far as they are intended to cover the technical reserves. If the bankruptcy is pronounced without prior emergency regulations or later than one month after the termination of emergency regulations, the same prohibition shall apply as from the date of the declaration of bankruptcy.

**Article 63**
1. If the Court pronounces the emergency regulations, the Bank shall exercise, exclusively, all powers of the directors, the members of the supervisory board or the representative of the insurer.

2. The Bank shall look after the interests of the joint creditors.

3. The directors, the members of the supervisory board or the representative of the insurer are obliged to provide the Bank all requested cooperation while it exercises the powers referred to in paragraph (1).

4. The Bank has the authority to authorise the board of directors or the representative of the insurer to perform specific acts.

5. The Bank has the authority to dismiss members of the board of directors, members of the supervisory board or the representative on behalf of the insurer. The contractually agreed or statutory notice periods shall be observed for such termination, with the understanding that a period of six weeks shall be sufficient in any case.

6. If the insurer has its seat within the Netherlands Antilles any decision by its shareholders or members shall require the Bank's approval to become effective.

7. In the event that a resolution of shareholders or members, as required for an action under the articles of association of the insurer referred to in paragraph (6), is not adopted or if this resolution does not obtain the approval required under the articles of incorporation, the Bank may adopt said resolution.

8. The Bank may authorise persons to exercise all or part of its powers under paragraph (1). The Bank may request the Court to determine remuneration for the persons thus authorised. The Bank shall publish the name and address of any person thus authorised as well as the revocation of any power of attorney in the publication for official government announcements. The Bank shall ensure the publication of the name and address of a person authorised by it, as well as the withdrawal of the

authorisation, to the Chamber of Commerce so that this information can be entered in the relevant registers of the Chamber of Commerce.

## Article 64

Pursuant to the authorisation granted to it, the Bank shall be authorised, irrespective of the applicable provisions of the insurer's articles of association:

a.
to issue and collect all payments not yet paid in respect of the shares in the issued capital or the guarantee capital of the insurer, as the case may be;

b.
impose and collect retrospective charges up to the maximum amount laid down in the articles of association if the insurer has the legal form of a mutual insurance society.

## Article 65

1. As a consequence of the pronouncement of the emergency regulations, the insurer cannot be forced to pay its debts that arose before the pronouncement, nor to pay its debts that arise after the pronouncement in respect of payments pursuant to current insurance contracts. Executory actions that have been commenced shall be suspended and any attachments levied shall lapse.

2. The provisions of paragraph (1) shall not apply with respect to:

a.
claims that are covered by a pledge or mortgage on the insurer's goods;

b.
hire-purchase instalments.

3. The pronouncement of the emergency regulations shall have effect with regard to claims that are secured by a pledge or a mortgage to the extent that these claims cannot be recovered from the encumbered object.

4. The pronouncement of the emergency regulations shall not advantage the co-debtors and guarantors of the insurer.

## Article 66

1. With regard to set-off of debt and debt assumption, Articles 224 and 225 of the Bankruptcy Decree 1931 (Official Gazette 1931, 58) shall apply, on the understanding that the debtor of the insurer who wishes to set off its debt with a claim under an order instrument or bearer instrument must prove that it was already the owner in good faith of the order instrument or bearer instrument at the time of the judgment granting the application for authorisation.

2. Articles 226, 227, 227a, 228 and 229 of the Bankruptcy Decree 1931 shall apply to reciprocal agreements in general and to futures contracts, hire-purchase contracts, leases and employment contracts in particular, to which the insurer in respect of which the authorisation has been granted is a party.

3. With regard to the payment of a debt to the insurer after the emergency regulations have been pronounced, Article 230 of the Bankruptcy Decree 1931 shall apply.

**Article 67**
1. The Court may, at the same time as the authorisation referred to in Article 60(2) or subsequently, and at the application of the Bank, grant the Bank special authorisation for one or more of the following acts:

a.
modification, in the event of the transfer of rights and obligations under or pursuant to insurance contracts, of such contracts;

b.
reduction of the duration of insurance contracts.

2. Modifications as referred to in paragraph (1)(a) that relate to life insurance contracts cannot cause additional obligations to be imposed on policy holders.

3. Article 60(3) to (7), (8), first sentence, and (9) shall apply to the special authorisation.

4. As soon as rights and obligations have been transferred pursuant to the authorisation referred to in Article 60(2), the Bank shall publish this transfer and, if it has taken action pursuant to the special authorisation referred to in paragraph (1), such action in the publication for official government announcements and in at least two newspapers designated by the Court. If the Bank considers this to be in the interests of policyholders, insured persons or persons entitled to benefits, it may also disclose the said transfer and acts in another manner.

5. The transfer as well as the modification referred to in paragraph (1)(a), shall take effect with regard to all interested parties other than the insurers concerned, as from the day following the day on which the publication has taken place in the publication for official government announcements.

**Article 68**
A transfer of rights and obligations under this Chapter may not prejudice the rights of the remaining creditors.

**Article 69**
1. The Court shall fix the amount of the costs of the emergency regulations. These costs shall be charged to the insurer.

2. The costs of the emergency regulations shall comprise the expenses incurred in respect thereof by or on behalf of the Bank as well as payment for the work carried out by or on behalf of the Bank in respect thereof.

**Article 70**
For the application of articles 200, 355, 356 and 360 of the Penal Code of the Netherlands Antilles, the legal status of an insurer during the period in which the emergency regulations apply to said insurer, shall be deemed to be identical to bankruptcy.

**Article 70a**

1. After the ending of the emergency regulations, when liquidation has taken place, the remaining funds from the claims of the policyholders who have not appeared or who have not been found, the insured parties or other entitled parties, as well as the funds of the policyholders, insured parties or other entitled parties who have not been willing to receive the funds allocated to them, shall be deposited with the consignment office. Twenty years after the date of deposit into the consignment office, the deposited funds shall fall due to the public legal entity Curaçao or the public legal entity Sint Maarten, depending on the place of establishment of the insurance business. The remaining funds of a company that is established in Curaçao will fall due to Curaçao and the remaining funds of a company that is established in Sint Maarten will fall due to Sint Maarten.

2. Publication of the deposits, as referred to in paragraph (1), shall take place in the publication for official government announcements, as well as in one or more newspapers to be chosen by the Bank. The notification may also be made in another manner to be determined by the Bank.

**Article 71**

1. The Bank shall file for the declaration of bankruptcy of the insurer if it becomes apparent that the insurer's equity capital is negative and either the objective to be achieved through the emergency regulations has been realised or no longer can be realised, or - where the emergency regulations were not previously pronounced - there is no reasonable prospect that the objective to be achieved by the emergency regulations may still be realized.

2. When assessing the amount of the equity capital of an insurer with its registered office abroad, only those assets and liabilities shall be taken into account which, in the Bank's opinion, are to be considered part of the insurance business carried out from establishments within the Netherlands Antilles.

3. The declaration of bankruptcy shall be issued irrespective of whether the insurer has ceased to make payments. However, the provisions under the first title of the Bankruptcy Decree 1931 remain applicable.

4. The emergency regulations shall cease to be effective by operation of law if the insurer is declared bankrupt. In such event, and also if the bankruptcy is declared within one month of the withdrawal of the emergency regulations, the following provisions shall apply:

a.
the date on which the periods referred to in Articles 39 and 41 of the Bankruptcy Decree 1931 commence, shall be calculated as from the date on which the decision with regard to the emergency regulations became effective;

b.
in deviation from Article 49 of the Bankruptcy Decree 1931, an appeal for a set-off of debt may only be made if both the claim due and the debt payable originated prior to the date on which the decision on the pronouncement of the emergency regulations obtained force, or if they result from an actions performed with the bankrupt insurer before that date;

c.
actions performed pursuant to Article 63 by or on behalf of the Bank during the period that the emergency regulations were in force, shall be deemed to be actions of the bankruptcy trustee, whereas any debt of the estate incurred during said period shall also in bankruptcy be deemed to be debt of the estate;

d.

the estate shall not be liable for obligations incurred by the insurer in breach of Article 63(1) and (4), during the period the emergency regulation were in force, unless the estate benefits therefrom;

e.

contrary to article 105(1) of the Bankruptcy Decree 1931, any claims resulting from life insurance contracts shall be filed by submitting the policy or a copy thereof, without the need to specify the amount of the claim. Insofar as the bankruptcy trustee will admit the claim, he shall fix the amount thereof.

**Article 72**

As soon as possible after the termination of the emergency regulations, and upon request during its period of force, the Bank shall report to the Minister of Finance.

**Article 73**

1. In the event of emergency regulations in accordance with this Chapter or in the event of the bankruptcy of an insurer, the debt of the estate in bankruptcy shall, in accordance with the provisions of the Bankruptcy Decree 1931, depending on the nature of the debt of the estate in bankruptcy, be either also apportioned among the assets referred to in Article 35 or deducted from a particular asset of the estate.

2. Without prejudice to the provisions of paragraph (1), in the event of emergency regulations or bankruptcy of an insurer, the assets referred to in paragraph (1) shall exclusively serve for the satisfaction of the claims against the insurer in respect of benefit payments pursuant to insurance contracts concluded from the offices in the Netherlands Antilles, not being payments pursuant to a reinsurance contract with another insurer.

3. The assets referred to in paragraph (1) cannot serve as recourse for claims, except for claims that are covered by a pledge or mortgage on these assets, unless it has been established that it will be possible to satisfy all claims mentioned in paragraph (2) and that no such further claims willarise in the future.

4. If the claims referred to in paragraph (2) have not been paid in full from the assets referred to in paragraph (1), the creditors involved shall for the remaining part of their claims rank after the other creditors in the distribution of the proceeds of the other assets of the insurer.



**Landsverordening Toezicht Verzekeringsbedrijf**

| | |
|---|---|
| HOOFDSTUK I | Inleidende bepalingen |
| HOOFDSTUK II | De toegang tot het verzekeringsbedrijf |
| | Afdeling 1: Algemene bepalingen |
| | Afdeling 2: Bepalingen omtrent verzekeraars met zetel in de Nederlandse Antillen |
| | Afdeling 3: Bepalingen omtrent verzekeraars met zetel in het buitenland |
| HOOFDSTUK III | De uitoefening van het verzekeringsbedrijf |
| | Afdeling 1: Algemene bepalingen |
| | Afdeling 2: Bepalingen omtrent de technische voorzieningen |
| | Afdeling 3: Bepalingen omtrent de solvabiliteitsmarge van verzekeraars met zetel in de Nederlandse Antillen |
| | Afdeling 4: Aanvullende bepalingen omtrent verzekeraars met zetel in het buitenland |
| HOOFDSTUK IV | Overdracht van rechten en verplichtingen uit overeenkomsten van levensverzekering |
| HOOFDSTUK V | Overdracht van rechten en verplichtingen uit overeenkomsten van schadeverzekering |
| HOOFDSTUK VI | Bijzondere maatregelen |
| HOOFDSTUK VII | Intrekking van de vergunning |
| HOOFDSTUK VIII | Noodregeling en faillissement |
| HOOFDSTUK IX | Bijzondere bepalingen |
| HOOFDSTUK IXA | Last onder dwangsom, bestuurlijke boete, geldschulden en verjaring |
| | Afdeling 1: Last onder dwangsom |
| | Afdeling 2: Bestuurlijke boete |
| | Afdeling 3: Geldschulden |
| | Afdeling 4: Verjaring |
| HOOFDSTUK IXB | Openbaarmaking van overtredingen |
| HOOFDSTUK X | Overgangsbepalingen |
| HOOFDSTUK XII | Toezicht, opsporing en strafbepaling |
| HOOFDSTUK XIIA | De natura-uitvaartverzekeraar |
| HOOFDSTUK XIII | Slotbepalingen |

===

**HOOFDSTUK I Inleidende bepalingen.**
Artikel 1
1. In deze landsverordening en de daarop berustende bepalingen wordt - voorzover niet anders blijkt - verstaan onder:

a. overeenkomsten van levensverzekering: overeenkomsten van verzekering tot het doen van geldelijke uitkeringen in verband met het leven of de dood van de mens, met dien verstande dat overeenkomsten van ongevallenverzekering niet als overeenkomsten van levensverzekering worden beschouwd;

| | |
|---|---|
| b. overeenkomsten van schadeverzekering: | overeenkomsten van verzekering die niet zijn overeenkomsten in verband met het leven of de dood van de mens, met dien verstande dat overeenkomsten van ongevallenverzekering als overeenkomsten van schadeverzekering worden beschouwd; |
| c. premie: | de in geld uitgedrukte prestatie, door de verzekeringnemer verschuldigd uit hoofde van een overeenkomst van verzekering; |
| d. levensverzekeringsbedrijf: | het als bedrijf sluiten van overeenkomsten van levensverzekering voor eigen rekening, met inbegrip van het afwikkelen van de in dat bedrijf gesloten overeenkomsten van levensverzekering, ook al wordt daarmee niet beoogd het maken van winst; |
| e. schadeverzekeringsbedrijf: | het als bedrijf sluiten van overeenkomsten van schadeverzekering voor eigen rekening, met inbegrip van het afwikkelen van de in dat bedrijf gesloten overeenkomsten van schadeverzekering, ook al wordt daarmee niet beoogd het maken van winst; |
| f. verzekeringsbedrijf | het levensverzekeringsbedrijf of het schadeverzekeringsbedrijf; |
| g. verzekeraar: | ieder die het verzekeringsbedrijf uitoefent; |
| h. vertegenwoordiger: | degene die door een verzekeraar met zetel in het buitenland is aangesteld om hem in de Nederlandse Antillen te vertegenwoordigen in de uitoefening van zijn bevoegdheden en in de naleving van de voorschriften die ingevolge deze landsverordening voor hem gelden; |
| i. zetel: | de plaats waar een rechtspersoon blijkens haar statuten is gevestigd; |
| j. vestiging: | zetel, agentschap of bijkantoor alsmede elke andere duurzame aanwezigheid van een verzekeraar op het grondgebied van een staat in de vorm van een inrichting, beheerd door eigen personeel van de verzekeraar of door een zelfstandig persoon die gemachtigd is om voor rekening van verzekeraar het verzekeringsbedrijf uit te oefenen;* |
| k. jaarrekening: | de balans en de winst- en verliesrekening van een verzekeraar met als bijlage de toelichting op deze stukken, zowel in de vorm waarin zij door het bestuur zijn opgemaakt, als in de vorm waarin zij door het daartoe bevoegde orgaan zijn vastgesteld of goedgekeurd; |
| l. de Minister: | de Minister van Financiën; |
| m. de Bank: | de Bank van Curaçao en Sint Maarten; |
| n. het Hof: | het Gemeenschappelijk Hof van Justitie van de Nederlandse Antillen en Aruba; |
| o. het Gerecht: | het Gerecht in eerste aanleg van de Nederlandse Antillen; |
| p. natura-uitvaartverzekeraar: | ieder die zijn bedrijf maakt van het voor eigen rekening sluiten van overeenkomsten van verzekering tot het |

|  | doen van uitkeringen in natura in verband met het overlijden van de mens, met inbegrip van het afwikkelen van de betrokken overeenkomsten, ook al wordt met de bedrijfsvoering het maken van winst niet beoogd; |
|---|---|
| q. gekwalificeerde deelneming: | een rechtstreeks of middellijk belang van meer dan 10% van het nominaal kapitaal van een onderneming of instelling, of het rechtstreeks of middellijk kunnen uitoefenen van meer dan 10% van de stemrechten in een onderneming of instelling, of het rechtstreeks of middellijk kunnen uitoefenen van een daarmee vergelijkbare zeggenschap in een onderneming of instelling; |
| r. externe deskundige: | een externe deskundige als bedoeld in artikel 121 van Boek 2 van het Burgerlijk Wetboek; |
| s. dwangbevel: | een schriftelijk bevel van de Bank dat ertoe strekt de betaling van een geldschuld af te dwingen; |
| t. toezichthoudende instantie: | een overheidsinstantie respectievelijk een van overheidswege aangewezen instantie die belast is met het toezicht op financiële markten of op rechtspersonen, vennootschappen of natuurlijke personen die op die markten werkzaam zijn, alsmede een overheidsinstantie, respectievelijk een van overheidswege aangewezen instantie die belast is met het toezicht op de naleving van wettelijke regelingen ter zake van de bestrijding van witwassen en de financiering van terrorisme. |

2. Het levensverzekeringsbedrijf verliest zijn karakter als zodanig niet, indien bij overeenkomsten van levensverzekering naast de verplichting tot het doen van geldelijke uitkeringen verplichtingen van andere aard worden aanvaard, of daarbij verplichtingen worden aanvaard in verband met voorvallen waarvan het ontstaan onzeker is en die de persoon van de mens treffen.

Artikel 2
1. Het toezicht op de verzekeraars, zoals dit uit deze landsverordening voortvloeit, berust bij de Bank.

2. Bij landsbesluit, houdende algemene maatregelen, wordt een instructie vastgesteld voor de directie van de Bank ter zake van de uitoefening van haar taak bij de uitvoering van deze landsverordening.

3. De commissarissen, de president en de direkteuren van de Bank noch het personeel van de Bank mogen op generlei wijze verbonden zijn aan of, anders dan uit hoofde van een overeenkomst van verzekering, belang hebben bij enige verzekeraar.

Artikel 3
Het schadeverzekeringsbedrijf wordt onderscheiden naar de volgende schadegroepen:

a. Ongevallen- en ziekteverzekering;

b. Motorrijtuigverzekering;



c. Zee-, transport- en luchtvaartverzekering;

d. Verzekering van brandschade en andere schade aan goederen;

e. Overige schadeverzekeringen.

Artikel 4
1. De Bank beslist of een handeling of een samenstel van handelingen al dan niet de uitoefening van het levensverzekeringsbedrijf, het schadeverzekeringsbedrijf of een andersoortig bedrijf vormt, respectievelijk of een handeling of samenstel van handelingen al dan niet de uitoefening van het verzekeringsbedrijf vanuit een vestiging in Curaçao vormt. Zij beslist ambtshalve dan wel op schriftelijk verzoek van degene die de handeling of het samenstel van handelingen verricht of voornemens is te verrichten.

2. De Bank beslist tot welke van de in artikel 3 genoemde schadegroepen een overeenkomst van schadeverzekering behoort. Zij beslist ambtshalve dan wel op schriftelijk verzoek van de verzekeraar die de overeenkomst van schadeverzekering sluit of voornemens is te sluiten.

3. De Bank deelt haar ingevolge het eerste of tweede lid genomen beslissing bij aangetekende brief aan de betrokkene mee.

4. Indien blijkt dat het bedrijf van een verzekeringsbedrijf wordt uitgeoefend zonder een vergunning, wordt op aanwijzing van de Bank, onverminderd het bepaalde in artikel 122, de uitoefening van dat bedrijf onmiddellijk gestaakt en worden onder toezicht van de Bank de verrichte handeling of handelingen, voor zover de Bank zulks mogelijk acht, binnen een door de Bank te stellen termijn, ongedaan gemaakt. De Bank kan, indien daartoe wordt verzocht, alsnog vergunning verlenen om het bedrijf van een kredietinstelling uit te oefenen.

5. Indien het bedrijf van een een verzekeringsbedrijf zonder een vergunning wordt uitgeoefend door een vennootschap opgericht naar het Curaçaose recht, kan de Bank, onverminderd het bepaalde in artikel 122, aan de rechter in eerste aanleg ontbinding van de vennootschap vorderen wanneer deze na een aanwijzing van de Bank als bedoeld in het vierde lid, het verzekeringsbedrijf blijft uitoefenen. Op een ontbondenverklaring zijn de bepalingen in titel 1 van Boek 2 van het Burgerlijk Wetboek die betrekking hebben op de ontbinding van een rechtspersoon van overeenkomstige toepassing.

Artikel 5
Deze landsverordening is, tenzij daaruit anders voortvloeit, van toepassing op:

a. verzekeraars met zetel in de Nederlandse Antillen;

b. verzekeraars met zetel in het buitenland voor wat betreft het verzekeringsbedrijf dat zij vanuit een vestiging in de Nederlandse Antillen uitoefenen.

Artikel 6
1. Als verzekeraars worden niet beschouwd:

a. de Sociale Verzekeringsbank;



b. fondsen, ingesteld door of vanwege het daartoe bevoegde gezag van het land dan wel het eilandgebied en die uitsluitend strekken ten bate van hen die in dienst van het gezag staan of gestaan hebben en hun betrekkingen.

2. Als uitoefening van het schadeverzekeringsbedrijf wordt niet beschouwd het sluiten of afwikkelen van overeenkomsten als bedoeld in artikel 1, tweede lid.

3. Als uitoefening van het verzekeringsbedrijf wordt, met inachtneming van het vierde lid, niet beschouwd het sluiten of afwikkelen van overeenkomsten van verzekering voor eigen rekening door ondernemingspensioenfondsen als bedoeld in artikel 1, eerste lid, onder b, van de Landsverordening Ondernemingspensioenfondsen (P.B. 1985, 44), die krachtens die landsverordening aan het toezicht van de Bank zijn onderworpen.

4. Het bepaalde in het derde lid is slechts van toepassing voor zover een ondernemingspensioenfonds handelt ter uitvoering van:

a. een toezegging omtrent pensioen als bedoeld in artikel 2 van de Landsverordening Ondernemingspensioenfondsen;

b. een vrijwillige pensioenvoorziening ten behoeve van een deelnemer in het ondernemingspensioenfonds, mits die voorziening past binnen het raam van de regeling die voor de categorie waartoe de deelnemer behoort, in het ondernemingspensioenfonds geldt ter uitvoering van een toezegging als in onder a bedoeld;

c. een regeling krachtens welke de voor een deelnemer bestaande pensioenvoorziening bij beëindiging van diens deelnemerschap vrijwillig wordt voortgezet.

Artikel 7
1. Bij landsbesluit, houdende algemene maatregelen, kunnen categorieën van verzekeraars worden aangewezen, waarop deze landsverordening geheel of gedeeltelijk niet van toepassing is. Deze aanwijzing kan onder voorwaarden geschieden en zij kan worden ingetrokken.

2. De verzekeraars, bedoeld in het eerste lid, zijn verplicht zich te houden, alsmede zich te blijven houden aan de voorwaarden die krachtens het landsbesluit, bedoeld in het eerste lid, zijn vastgesteld.

===

**HOOFDSTUK VII Intrekking van de vergunning.**
Artikel 55
1. De Bank trekt de vergunning in, indien:
a. de verzekeraar de intrekking daarvan verzoekt. Binnen 60 dagen na ontvangst van een zodanig verzoek wordt daarop door de Bank beslist;
b. de verzekeraar in staat van faillissement is verklaard of aan hem surseance van betaling is verleend;
c. de verzekeraar de uitoefening van het levensverzekeringsbedrijf dan wel de bedrijfsuitoefening in de betrokken schadegroep heeft gestaakt;
d. de verzekeraar kennelijk niet meer voldoet aan de in artikel 1, onderdeel g, gegeven definitie;
e. de verzekeraar van de vergunning misbruik of oneigenlijk gebruik maakt;
f. de structuur van de groep waarvan de verzekeraar deel uitmaakt zodanig wordt gewijzigd dat de Bank of de instantie van het land van herkomst die met het toezicht op verzekeraars is belast, onvoldoende

adequaat en effectief toezicht, onderscheidenlijk geconsolideerd toezicht kan uitoefenen op de verzekeraar; of

g. de verzekeraar of een van de beleidsbepalende of medebeleidsbepalende personen van de betreffende verzekeraar niet of niet meer voldoen aan de bij of krachtens deze landsverordening opgelegde verplichtingen.

2. De Bank kan de vergunning intrekken, indien:

a. de gegevens of bescheiden die zijn verstrekt ter verkrijging van de vergunning zodanig onjuist of onvolledig blijken, dat op het verzoek een andere beslissing zou zijn genomen als bij de beoordeling van het verzoek de juiste omstandigheden volledig bekend waren geweest;

b. zich omstandigheden voordoen of feiten bekend worden op grond waarvan, zo zij voor het tijdstip waarop de vergunning werd verleend zich hadden voorgedaan of bekend waren geweest, de vergunning zou zijn geweigerd;

c. één der bestuurders of degene die het dagelijks beleid van de verzekeraar bepaalt of mede bepaalt in staat van faillissement is verklaard of aan hem surseance van betaling is verleend;

d. de verzekeraar niet binnen een door de Bank vast te stellen termijn met haar bedrijf daadwerkelijk een aanvang heeft gemaakt.

Artikel 56

1. Een besluit tot intrekking van de vergunning of de weigering tot intrekking van de vergunning, is met redenen omkleed en wordt door de Bank bij deurwaardersexploot aan de betrokken verzekeraar betekend.

2. De intrekking wordt eerst van kracht wanneer het daartoe strekkende besluit onherroepelijk is geworden.

3. Het besluit tot intrekking van de vergunning en indien de Bank zulks noodzakelijk acht in het belang van de ontwikkeling en instandhouding van een gezond verzekeringswezen, ook de redenen voor de intrekking, worden zo spoedig mogelijk nadat dit besluit onherroepelijk is geworden, digitaal bekend gemaakt op de website van de Bank. De Bank kan, indien zij dit in het belang van de verzekeringnemers, verzekerden of gerechtigden op uitkeringen acht, het besluit, alsmede de redenen voor de intrekking, bedoeld in het eerste volzin, eveneens op andere door haar te bepalen wijze bekendmaken. De kosten van de laatstbedoelde bekendmaking komen ten laste van de betrokken verzekeraar.

4. De Bank kan de in het derde lid bedoelde publicatie tot een nader door haar te bepalen tijdstip aanhouden, indien de bekendmaking ernstige schade aan de belangen van verzekeringnemers, verzekerden of gerechtigden op uitkeringen zou kunnen toebrengen.

5. De verzekeraar die bezwaar of beroep heeft aangetekend tegen de weigering van de Bank om de vergunning in te trekken, is verplicht hangende de behandeling van het bezwaar of beroep haar bedrijf voort te zetten met inachtneming van de bij of krachtens deze landsverordening vastgestelde algemeen verbindende voorschriften, alsmede de voorschriften verbonden aan en de beperkingen gesteld bij de vergunning.

Artikel 57

De intrekking van een vergunning verplicht de verzekeraar het betrokken gedeelte van zijn bedrijf af te wikkelen. Hij blijft daarbij onderworpen aan de bepalingen van deze landsverordening.

Artikel 58

1. Indien de Bank een vergunning intrekt op grond van artikel 55, onderdeel g, beperkt zij de uitoefening van de bevoegdheid van de verzekeraar om over zijn waarden te beschikken of verbiedt zij hem om anders dan met haar schriftelijke machtiging over deze waarden te beschikken, voor zover zulks niet reeds ingevolge artikel 51, eerste lid, of artikel 53, eerste lid, is geschied.

2. De Bank brengt de beperking of het verbod, opgelegd ingevolge het eerste lid, bij het besluit tot intrekking van de vergunning ter kennis van de verzekeraar.

3. De Bank maakt de beperking of het verbod, opgelegd ingevolge het eerste lid, artikel 51, eerste lid of artikel 53, eerste lid, openbaar bij de bekendmaking, bedoeld in artikel 56, derde lid.

4. De Bank kan namens de verzekeraar de ongeldigheid inroepen van een rechtshandeling, door de verzekeraar in strijd met de beperking of het verbod verricht. Is de rechtshandeling verricht voor de openbaarmaking van de beperking of het verbod, dan kan de verzekeraar dan wel de Bank namens hem de ongeldigheid van de rechtshandeling inroepen indien de wederpartij de beperking onderscheidenlijk het verbod kende of daarvan niet onkundig kon zijn.

5. De Bank heft de beperking of het verbod, opgelegd ingevolge het eerste lid, op zodra het besluit tot intrekking van de vergunning is vernietigd.

===

**HOOFDSTUK VIII Noodregeling en faillissement.**
Artikel 59

1. Een vordering of verzoek tot faillietverklaring van een verzekeraar - eigen aangifte daaronder begrepen - wordt niet in behandeling genomen zolang de verzekeraar in het bezit is van een vergunning als bedoeld in artikel 9, onder a.

2. Indien alle vergunningen van een verzekeraar zijn ingetrokken, wordt op het verzoek of de vordering tot faillietverklaring niet beslist dan nadat de rechter de Bank in de gelegenheid heeft gesteld haar gevoelen daaromtrent kenbaar te maken.

3. De wettelijke bepalingen inzake surséance van betaling zijn op verzekeraars niet van toepassing.

Artikel 60

1. Wanneer het belang der gezamenlijke schuldeisers van de verzekeraar, wiens vergunning is ingetrokken een bijzondere voorziening vordert, kan het Gerecht, op verzoek van de Bank de noodregeling uitspreken.

2. Bij het uitspreken van de noodregeling machtigt het Gerecht de Bank tot:
a. vereffening van het geheel of van een gedeelte van de portefeuille van de verzekeraar;
b. overdracht van alle of van een deel van zijn rechten en verplichtingen uit of krachtens overeenkomsten van verzekering: of
c. herstructurering van het bedrijf van de verzekeraar.
Zolang de Bank nog niet is gebleken dat de verzekeraar een negatief eigen vermogen heeft, strekt de machtiging mede tot vereffening van het vermogen van de onderneming van de verzekeraar.

3. Ten aanzien van een verzekeraar met zetel in het buitenland heeft de machtiging betrekking op het vanuit de vestigingen in de Nederlandse Antillen uitgeoefende verzekeringsbedrijf.

4. Het Gerecht behandelt het verzoek van de Bank tot het uitspreken van de noodregeling met de meeste spoed op een openbare terechtzitting op de voet van de rechtspleging in burgerlijke zaken, voor zover daarvan bij deze landsverordening niet is afgeweken.

5. Het Gerecht is bevoegd inzage te nemen of te doen nemen van de boeken en zakelijke bescheiden van de verzekeraar. Artikel 30 is daarbij van overeenkomstige toepassing.

6. Het Gerecht geeft geen beschikking dan nadat de verzekeraar en de Bank zijn gehoord althans behoorlijk zijn opgeroepen.

7. Een door de verzekeraar tegen de intrekking van een vergunning ingesteld bezwaar of beroep schorst de behandeling van het verzoek van de Bank tot het uitspreken van de noodregeling niet.

8. De beschikking van het Gerecht wordt met redenen omkleed en wordt, zo het verzoek van de Bank wordt toegewezen, op een openbare terechtzitting uitgesproken. De griffier maakt de zakelijke inhoud van de beschikking bekend in het blad waarin van Landswege de officiële berichten worden geplaatst.

9. Tegen de beschikking staat generlei voorziening open behoudens cassatie in het belang der wet.

Artikel 61
1. Wanneer een verzoek van de Bank tot het uitspreken van de noodregeling aanhangig is tegelijk met een verzoek of vordering tot faillietverklaring, wordt de behandeling van het verzoek of de vordering tot faillietverklaring geschorst totdat op het verzoek van de Bank is beschikt. Indien het Gerecht de noodregeling uitspreekt, vervalt het verzoek of de vordering tot faillietverklaring van rechtswege.

2. Het uitspreken van de noodregeling heeft mede tot gevolg dat de verzekeraar slechts in staat van faillissement kan worden verklaard overeenkomstig artikel 71.

3. Het Gerecht kan op verzoek van de Bank de noodregeling intrekken. De griffier maakt de intrekking bekend in het blad waarin van Landswege de officiële berichten worden geplaatst.

Artikel 62
Vanaf de dag van het uitspreken van de noodregeling mogen aan de in artikel 35 bedoelde waarden geen andere waarden worden toegevoegd dan de sindsdien ontvangen premies of de met die premies verkregen waarden, voor zover deze dienen tot dekking van de technische voorzieningen. Indien faillissement wordt uitgesproken zonder voorafgaande noodregeling of later dan een maand na de beëindiging van de noodregeling, geldt hetzelfde verbod vanaf de dag van faillietverklaring.

Artikel 63
1. Indien het Gerecht de noodregeling uitspreekt, oefent de Bank bij uitsluiting alle bevoegdheden van de bestuurders, de commissarissen of de vertegenwoordiger van de verzekeraar uit.

2. De Bank waakt voor de belangen van de gezamenlijke schuldeisers.



3. De bestuurders, de commissarissen of de vertegenwoordiger van de verzekeraar zijn verplicht bij de uitoefening door de Bank van de in het eerste lid bedoelde bevoegdheden alle door de Bank gevraagde medewerking te verlenen.

4. De Bank is bevoegd de bestuurders of de vertegenwoordiger van de verzekeraar te machtigen bepaalde handelingen te verrichten.

5. De Bank is bevoegd bestuurders, commissarissen of de vertegenwoordiger namens de verzekeraar te ontslaan. Bij dit ontslag worden de overeengekomen of wettelijke termijnen in acht genomen, met dien verstande dat een termijn van zes weken in elk geval voldoende is.

6. Indien de verzekeraar zijn zetel in de Nederlandse Antillen heeft, behoeft een besluit van zijn aandeelhouders of leden om van kracht te zijn de goedkeuring van de Bank.

7. Wordt een besluit van aandeelhouders of leden, dat ingevolge de statuten van de in het zesde lid bedoelde verzekeraar voor een handeling is vereist, niet genomen of verkrijgt dit besluit niet de volgens de statuten vereiste goedkeuring, dan kan de Bank dit besluit nemen.

8. De Bank kan personen machtigen alle of een deel van de bevoegdheden uit te oefenen, die zij ingevolge het eerste lid heeft. De Bank kan het Gerecht verzoeken een beloning voor de gemachtigden vast te stellen. De Bank maakt naam en woonplaats van een door haar gemachtigde alsook de intrekking van een machtiging bekend in het blad waarin van Landswege de officiële berichten worden geplaatst. De Bank draagt zorg voor bekendmaking van de naam en woonplaats van een door haar gemachtigde, alsook de intrekking van de machtiging aan de Kamer van Koophandel opdat deze gegevens in de betreffende registers van de Kamer van Koophandel kunnen worden opgenomen.

Artikel 64
Ingevolge de haar verleende machtiging is de Bank, ongeacht hetgeen daaromtrent bij de statuten van de verzekeraar is bepaald, bevoegd:

a.
alle nog niet gedane stortingen op de aandelen in het geplaatste kapitaal onderscheidenlijk het waarborgkapitaal van de verzekeraar uit te schrijven en te innen;

b.
naheffingen op te leggen en te innen tot het in de statuten bepaalde maximum indien de verzekeraar de rechtsvorm van onderlinge waarborgmaatschappij bezit.

Artikel 65
1. Het uitspreken van de noodregeling heeft tot gevolg dat de verzekeraar niet kan worden genoodzaakt tot nakoming van zijn schulden die voor de uitspraak zijn ontstaan, zomin als tot nakoming van zijn schulden, na de uitspraak ontstaan terzake van uitkeringen krachtens lopende overeenkomsten van verzekering. Aangevangen executiën worden geschorst en gelegde beslagen vervallen.

2. Het in het eerste lid bepaalde geldt niet voor:

a.
vorderingen die door pand of hypotheek op goederen van de verzekeraar zijn gedekt;



b.

termijnen van huurkoop.

3. Voor zover vorderingen die door pand of hypotheek zijn gedekt, niet op de verbonden zaak kunnen worden verhaald, werkt de uitspraak wel ten aanzien van deze vorderingen.

4. Het uitspreken van de noodregeling werkt niet ten voordele van de medeschuldenaren en borgen van de verzekeraar.

Artikel 66

1. Met betrekking tot schuldvergelijking en schuldoverneming vinden de artikelen 224 en 225 van het Faillissementsbesluit 1931 (P.B. 1931, 58) overeenkomstige toepassing, met dien verstande dat de schuldenaar van de verzekeraar die zijn schuld wil vergelijken met een schuldvordering aan order of toonder, gehouden is te bewijzen dat hij reeds op het ogenblik der uitspraak waarbij het verzoek tot machtiging werd toegewezen, te goeder trouw eigenaar was van het order- of toonderpapier.

2. Met betrekking tot wederkerige overeenkomsten in het algemeen en tot termijnzaken, overeenkomsten van huurkoop, huurovereenkomsten en arbeidsovereenkomsten in het bijzonder, waarbij de verzekeraar ten aanzien waarvan de machtiging is verleend, partij is, vinden de artikelen 226, 227, 227a, 228 en 229 van het Faillissementsbesluit 1931 overeenkomstige toepassing.

3. Met betrekking tot de voldoening van een schuld aan de verzekeraar nadat de noodregeling is uitgesproken, vindt artikel 230 van het Faillissementsbesluit 1931 overeenkomstige toepassing.

Artikel 67

1. Het Gerecht kan tegelijk met de in artikel 60, tweede lid, bedoelde machtiging of daarna de Bank op haar verzoek een bijzondere machtiging verlenen die strekt tot een of meer van de volgende handelingen:

a.

wijziging, bij de overdracht van rechten en verplichtingen uit of krachtens overeenkomsten van verzekering, van die overeenkomsten;

b.

verkorting van de duur van overeenkomsten van verzekering.

2. Wijzigingen, als bedoeld in het eerste lid, deel a, die op overeenkomsten van levensverzekering betrekking hebben, kunnen niet tot gevolg hebben dat aan verzekeringnemers meer verplichtingen worden opgelegd.

3. Ten aanzien van de bijzondere machtiging is artikel 60, derde tot en met zevende lid, achtste lid, eerste volzin, en negende lid, van overeenkomstige toepassing.

4. Zodra overdracht van rechten en verplichtingen krachtens de in artikel 60, tweede lid, bedoelde machtiging heeft plaatsgevonden, maakt de Bank deze overdracht en, zo handelingen door haar zijn verricht krachtens de in het eerste lid bedoelde bijzondere machtiging, die handelingen bekend in het blad waarin van Landswege de officiële berichten worden geplaatst en in tenminste twee door het Gerecht aan te wijzen dagbladen. De Bank kan, indien zij dit in het belang van verzekeringnemers,

verzekerden of gerechtigden op uitkeringen acht, de bedoelde overdracht en handelingen tevens op andere wijze bekendmaken.

5. De overdracht alsmede de wijziging, bedoeld in het eerste lid, deel a, worden ten aanzien van alle andere belanghebbenden dan de betrokken verzekeraars van kracht met ingang van de dag, volgende op die waarop de bekendmaking in het blad waarin van Landswege de officiële berichten worden geplaatst, is geschied.

Artikel 68
Een overdracht van rechten en verplichtingen ingevolge dit hoofdstuk mag geen nadeel toebrengen aan de rechten van de overblijvende schuldeisers.

Artikel 69
1. Het Gerecht stelt het bedrag vast van de kosten van de noodregeling. Deze kosten komen ten laste van de verzekeraar.

2. De kosten van de noodregeling omvatten de door of namens de Bank terzake gedane uitgaven en de vergoeding van de door of namens haar terzake verrichte werkzaamheden.

Artikel 70
Voor de toepassing van de artikelen 200, 355, 356 en 360 van het Wetboek van Strafrecht van de Nederlandse Antillen wordt met faillissement gelijkgesteld de rechtstoestand waarin een verzekeraar verkeert zolang te zijnen aanzien de noodregeling van kracht is.

Artikel 70a
1. Na afloop van de noodregeling, wanneer liquidatie heeft plaatsgevonden, worden de overgebleven gelden van de vorderingen van de niet verschenen verzekeringnemers dan wel niet gevonden verzekeringnemers, verzekerden of andere gerechtigden, alsmede de gelden van de verzekeringnemers, verzekerden of andere gerechtigden die de hen toegekende gelden niet in ontvangst hebben willen nemen, gestort in de consignatiekas. Twintig jaar na datum van storting in de consignatiekas vervallen de gestorte gelden aan de openbare rechtspersoon Curaçao of de openbare rechtspersoon Sint Maarten, afhankelijk van de plaats van vestiging van het verzekeringsbedrijf. De overgebleven gelden van een bedrijf dat op Curaçao is gevestigd vervallen aan Curaçao en de overgebleven gelden van een bedrijf dat op Sint Maarten is gevestigd vervallen aan Sint Maarten.

2. Bekendmaking van de stortingen, bedoeld in het eerste lid, vindt plaats in het blad waarin van Landswege de officiële berichten worden gepubliceerd, alsmede in één of meer dagbladen ter keuze van de Bank. De bekendmaking kan ook plaatsvinden op een andere door de Bank te bepalen wijze.

Artikel 71
1. De Bank dient een verzoek tot faillietverklaring van de verzekeraar in, indien haar blijkt dat de verzekeraar een negatief eigen vermogen heeft en hetzij het met de noodregeling te bereiken doel is of niet meer kan worden verwezenlijkt, hetzij - indien niet tevoren de noodregeling werd uitgesproken - geen redelijk vooruitzicht meer bestaat dat het met de noodregeling te bereiken doel alsnog kan worden verwezenlijkt.

2. Bij de beoordeling van de omvang van het eigen vermogen van een verzekeraar met zetel in het buitenland worden uitsluitend de activa en passiva in aanmerking genomen die naar het oordeel van de Bank behoren tot het vanuit de vestigingen in de Nederlandse Antillen uitgeoefende verzekeringsbedrijf.

3. De faillietverklaring wordt uitgesproken ongeacht of de verzekeraar verkeert in een toestand van te hebben opgehouden te betalen. Het bepaalde in de eerste titel van het Faillissementsbesluit 1931 is overigens van toepassing.

4. De noodregeling houdt van rechtswege op van kracht te zijn ingeval de verzekeraar in staat van faillissement wordt verklaard. Alsdan, zomede indien de faillietverklaring wordt uitgesproken binnen een maand na het intrekken van de noodregeling, gelden de volgende bepalingen:

a.
het tijdstip waarop de termijnen, in de artikelen 39 en 41 van het Faillissementsbesluit 1931 vermeld, aanvangen, wordt berekend vanaf het tijdstip waarop de beschikking, houdende het uitspreken van de noodregeling, uitvoerbaar is geworden;

b.
een beroep op schuldvergelijking kan in afwijking van artikel 49 van het Faillissementsbesluit 1931 slechts worden gedaan indien de schuldvordering en de schuldplichtigheid beide zijn ontstaan voor het tijdstip waarop de beschikking, houdende het uitspreken van de noodregeling uitvoerbaar is geworden dan wel voortvloeien uit een handeling voor dat tijdstip met de gefailleerde verricht;

c.
handelingen, ingevolge artikel 63 door of namens de Bank verricht gedurende de tijd dat de noodregeling van kracht was, worden beschouwd als handelingen van de curator, terwijl boedelschulden, gedurende die tijd ontstaan, ook in het faillissement als boedelschulden zullen gelden;

d.
de boedel is niet aansprakelijk voor verbintenissen van de verzekeraar die in strijd met artikel 63, eerste en vierde lid, zijn aangegaan gedurende de tijd dat de noodregeling van kracht was, dan voor zover deze daardoor is gebaat;

e.
vorderingen uit overeenkomsten van levensverzekering kunnen in afwijking van artikel 105, eerste lid, van het Faillissementsbesluit 1931 worden ingediend door overlegging van de polis of een afschrift daarvan, zonder dat het bedrag van de vordering behoeft te worden vermeld. Voor zover de curator de vordering erkent, stelt hij de omvang daarvan vast.

Artikel 72
De Bank brengt na beëindiging van en desgevraagd tijdens de noodregeling daaromtrent zo spoedig mogelijk verslag uit aan de Minister van Financiën.

Artikel 73
1. In geval van noodregeling overeenkomstig dit hoofdstuk of van faillissement van een verzekeraar worden de boedelschulden, overeenkomstig de bepalingen van het Faillissementsbesluit 1931, al naar gelang de aard van de betrokken boedelschuld hetzij mede over de in artikel 35 bedoelde waarden omgeslagen, hetzij uitsluitend van een bepaalde bate van de boedel afgetrokken.

2. Onverminderd het bepaalde in het eerste lid dienen in geval van noodregeling of van faillissement van een verzekeraar de in het eerste lid bedoelde waarden uitsluitend tot voldoening van de vorderingen ten laste van de verzekeraar terzake van uitkeringen krachtens de vanuit de vestigingen

de Nederlandse Antillen gesloten overeenkomsten van verzekering, niet zijnde uitkeringen, krachtens overeenkomst van herverzekering aan een andere verzekeraar verschuldigd.

3. Op de in het eerste lid bedoelde waarden zijn behoudens vorderingen die door pand of hypotheek op deze waarden zijn gedekt, geen andere vorderingen verhaalbaar, tenzij vaststaat dat alle vorderingen, genoemd in het tweede lid, zullen kunnen worden voldaan en dat in de toekomst zodanige vorderingen niet meer zullen ontstaan.

4. Ingeval de in het tweede lid bedoelde vorderingen niet volledig uit de in het eerste lid bedoelde waarden zijn voldaan, nemen de betrokken schuldeisers voor het overblijvende deel van hun vorderingen rang na de overige schuldeisers bij de verdeling van de opbrengst van de overige goederen van de verzekeraar.

