**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ENNIA Caribe Holding N.V., *et al.*,[1]<br><br>Debtors in a Foreign Proceeding. | **FOR PUBLICATION**<br><br>Case No. 18-12908 (MG) |

**MEMORANDUM OPINION GRANTING DISCRETIONARY RELIEF**

*A P P E A R A N C E S:*

DAVIS POLK & WARDWELL LLP
*Counsel to the Foreign Representative*
450 Lexington Avenue New York, New York 10017
By:   Timothy Graulich, Esq.
        James I. McClammy, Esq.
        Rachelle Navarro, Esq.
        Adam L. Shpeen, Esq.

PROSKAUER ROSE LLP
*Counsel for Parman International B.V.*
Eleven Times Square, New York, New York 10036
By:   Martin J. Bienenstock, Esq.
        Timothy Q. Karcher, Esq.
        David A. Picon, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

       The chapter 15 Debtors in this case include several regulated Curaçao insurance entities and their unregulated affiliates.  The Debtors' Foreign Representative moves the Court to issue an order entrusting the Foreign Representative with the administration, realization, and distribution of approximately $240 million held in accounts in the names of the Debtors at Merrill Lynch in the New York.  ("Motion," ECF Doc. # 78.)  Parman International B.V.

---

[1]       The Debtors in this case are ENNIA Caribe Holding N.V. ("ECH"), EC Holding N.V. ("EC Holding"), ENNIA Caribe Leven N.V. ("ECL"), ENNIA Caribe Zorg N.V. ("ECZ"), ENNIA Caribe Schade N.V. ("ECS") and EC Investments B.V. ("ECI.").

("Parman"), the non-debtor direct or indirect owner of each of the Debtors, objects to the Motion. ("Objection," ECF Doc. # 84.)

On December 20, 2018, the Court recognized a Curaçao insurance company rehabilitation proceeding of all six foreign debtors as a Foreign Main Proceeding, and R.M. Hermans as the Foreign Representative, overruling Parman's objection. *See In re ENNIA Caribe Holding N.V.*, 594 B.R. 631 (Bankr. S.D.N.Y. 2018). Familiarity with that decision is assumed. The issue now is whether to grant discretionary relief to the Foreign Representative, entrusting him with the Debtors' funds in the Merrill Lynch accounts under section 1521(a)(5) and 1521(b).

The Court may grant the requested relief if it finds that it is "necessary to effectuate the purposes of [chapter 15] and to protect the assets of the debtor," and "the interests of creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. §§ 1521(a) and 1522(a). The Court concludes that the requested relief is necessary to effectuate the purposes of chapter 15 and to protect the assets of the Debtors. The Debtors face growing liquidity concerns and the funds and securities in the Merrill Lynch accounts represent their primary liquid assets. Parman does not contend otherwise. Instead, Parman argues that it is not sufficiently protected if the assets are entrusted to the Foreign Representative for administration, realization, and distribution in Curaçao. The Court concludes that Parman's interests, assuming without deciding that they are entitled to protection, and the interests of any other interested parties, are sufficiently protected. To the extent that Parman is harmed by the requested relief, the potential harm to Parman is far outweighed by the harm that would be suffered by the Debtors, and most importantly, to the Debtors' creditors, particularly pension and insurance policy holders that depend on the Debtors for payment of their benefits, if the relief is denied.

Accordingly, the Motion is **GRANTED** on the terms set forth in a separate order entered by the Court.

## I.   BACKGROUND

The Debtors in this case are ENNIA Caribe Holding N.V. ("ECH"), EC Holding N.V. ("EC Holding"), ENNIA Caribe Leven N.V. ("ECL"), ENNIA Caribe Zorg N.V. ("ECZ"), ENNIA Caribe Schade N.V. ("ECS") and EC Investments B.V. ("ECI," and, together with ECH, EC Holding, ECL, ECZ and ECS, the "Debtors"). The Debtors are part of ENNIA Caribe Holding N.V. ("ENNIA"), that operates the largest insurance company in Curaçao and St. Maarten.

### A.   Procedural History

On July 3, 2018, the Central Bank of Curaçao and St. Maarten ("CBCS") filed an order seeking application of the Emergency Regulations to the Debtors. On July 4, 2018, the Court of First Instance of Curaçao placed Debtors ECL, ECS, ECZ, ECH, and ECI under Emergency Regulations. (Declaration of R.M. Hermans, ECF Doc. # 5, at 24.) On July 6, 2018, the Curaçao court extended the Emergency Regulations to the remaining Debtor, EC Holding. (*Id.*, at 37.) Under the authority granted by the Curaçao court, the CBCS assumed control of the operations of the Debtors.

On September 25, 2018, the CBCS appointed R.M. Hermans as the Foreign Representative of each of the Debtors to commence these chapter 15 cases. (*Id.* ¶ 4.) The Foreign Representative filed chapter 15 petitions with this Court the same day. (ECF Doc. # 1.) On December 20, 2018, this Court recognized the Curaçao proceeding as a foreign main proceeding and recognized R.M. Hermans as the Foreign Representative.

The Debtors face an immediate liquidity need. They state that the net negative cash flow of the Debtors, especially ECL, will lead to material cash shortfalls as early as January 2019. (Declaration of Lesley-Ann Brodie ("Brodie Declaration"), ECF Doc. # 79 ¶ 35.) The Debtors forecast that their aggregate shortfall will increase to $40 million by March 31, 2019. (*Id.*) The Debtors hope to resolve their liquidity issues by accessing the Debtors' investment accounts at Merrill Lynch in the United States. (Motion ¶ 3.) The Debtors claim that they will be unable to make timely payments to claimholders if they are not granted immediate access to these accounts.

Accordingly, the Foreign Representative moves the Court for an order entrusting the Foreign Representative with the administration, realization, and distribution of all accounts held in the names of the Debtors at Merrill Lynch. Specifically, the Debtors seek to access the ECL, ECI, and ECH accounts at Merrill Lynch. (Motion ¶ 4.) The Debtors are currently prevented from accessing the funds in these accounts due to an administrative freeze imposed by Merrill Lynch. (Brodie Declaration ¶ 27.) A hearing on the Motion was held on January 22, 2019 (the "Hearing").

### B.    The ECL Account

ECL is an operating insurance company. (Brodie Declaration ¶ 31.) The Debtors are the ultimate source of funds for all of the cash and investments in the ECL account. (*Id.* ¶ 28.) The ECL account held $101 million in cash/cash equivalents and $450,000 in securities as of July 2018. (*Id.* ¶ 27.) Parman does not object to the release of funds in the ECL account. (Objection ¶ 4.)

4

### C. The ECI Account

ECI is an investment company that invests the money of other ENNIA entities. (Brodie Declaration ¶ 7-8.) It does not manage assets for any other parties. (*Id.* ¶ 8.) The assets in the ECI Merrill Lynch account are derived from insurance provider Debtors ECL and ECS. (Motion ¶ 17; Brodie Declaration ¶ 28.) As of 2016, 96.3% of ECI's liabilities are owed to other ENNIA entities. (Brodie Declaration ¶ 10.) This figure includes intercompany customer deposits to insurance Debtor ECL in the amount of $227,535,810, intercompany customer deposits to insurance Debtor ECS in the amount of $7 million, and intercompany customer deposits to affiliated non-debtor Banco di Caribe in the amount of $10 million.[2] (*Id.* ¶ 12-13.) ECI also has an outstanding loan facility owed to ECH in the amount of $61,694,900. (*Id.* ¶ 15.) The funds from this loan came from two other intercompany loans: a loan of $57,922,900 by ECL to ECH and a loan of $3,772,000 by ECS to ECH. (*Id.*) ECI also owes $65,300,600 in account payables to ECH and ECL, and $10,614,539 in accounts payable to Banco di Caribe. (*Id.* ¶ 18.) In addition to ENNIA entities, ECI has accounts payable to PricewaterhouseCoopers, and other tax-related liabilities. (*Id.* ¶ 11.)

The ECI account is concentrated in four stocks: Twitter Inc., Kirby Corporation, Nabors Industries Ltd., and Snap Inc. (*Id.* ¶ 29.) These investments performed poorly in 2018. In July 2018 the account was worth approximately $175 million.[3] (*Id.* ¶ 27.) Since then, the total value of the equity in the ECI account has decreased to under $124 million.[4] (*Id.* ¶ 30.)

---

[2]    Banco di Caribe, like the insurance company Debtors in this case, is regulated by the CBCS.

[3]    The Brodie Declaration lists the July 2018 value of the ECI account as $161 million. At the Hearing the Debtors explained that the $161 million figure represents the value of the account at the end of July 2018. They further explained that at the beginning of January 2019, the account had a value of $175 million.

[4]    The CBCS contends that it was and remains inappropriate for funds derived from insurance premiums to be invested in a limited number of volatile stocks.

### D. The ECH Account

ECH is the central holding company in ENNIA's corporate structure. (Motion ¶ 6(c).) It is the direct or indirect parent of each of the other Debtors. (Brodie Declaration ¶ 34.) It has no business operations of its own, except to contract for services to be provided to its subsidiaries. (Motion ¶ 24.) ECH receives funding from subsidiaries within the ENNIA group. (*Id.* ¶ 22.) As of December 2016, ECH has intercompany liabilities owing to ECL totaling $438,418,000. (*Id.* ¶ 23.) As of July 2018, the ECH Merrill Lynch account held $390,000 in cash and cash equivalents. (*Id.* ¶ 27.)

### E. Parman

Parman wholly owns Debtor ECH, which in turn is the direct or indirect parent of each of the other Debtors. (Objection ¶¶ 10, 34.) Parman also wholly owns Banco di Caribe. (*Id.* ¶ 11.) Parman objects to the release of funds in the ECI and ECH accounts. Parman requests that the Court take the following measures to protect Parman's interests:

> (i) Grant the requested relief with respect to ECL, to the extent necessary to meet Foreign Representative's alleged $40 million medium-term liquidity needs;
> (ii) Order an accounting of each of the Debtors;
> (iii) Order and direct the Foreign Representative, CBCS, and Parman to confer regarding a protocol for the parties' joint administration of the assets in the ECI Merrill Lynch account ("ECI Account Joint Administration Protocol") and other matters outstanding between the parties;
> (iv) In the event the Foreign Representative, CBCS, and Parman cannot agree on an ECI Account Joint Administration Protocol, refer the parties to mediation to determine appropriate access to and administration of the assets in the ECI Merrill Lynch account; and
> (v) We further respectfully request that this Court not issue any order until after January 31, 2019 to permit the Court in Curaçao to issue its decision which may moot issues before this Court.

(*Id.* ¶ 48.)

6

Most of the measures requested by Parman would—improperly, in the Court's view—interfere with the insurance company rehabilitation proceeding approved by the Curaçao court, and now under control of the CBCS pursuant to Curaçao law. Parman admitted during the Hearing on discretionary relief that all of the funds in the ECH, ECI and ECL Merrill Lynch accounts are property of the Debtors.

### F.  The Proposed Order

Following the hearing on discretionary relief, at the direction of the Court, counsel for the Foreign Representative and for Parman agreed to a proposed form of order approving the relief requested in the Motion. ("Proposed Order," ECF Doc. # 93, at 1-2.) The Proposed Order describes the protections the Debtors and the CBCS will provide to Parman, the Debtors' creditors, and other interested parties. Pursuant to the Proposed Order, the Debtors and the CBCS undertake and agree that:

  i. ECH will segregate and reserve (but may transfer to another account or institution) the funds currently on deposit in the ECH account (*Id.* ¶ C.i);
  ii. ECI will segregate and reserve (but may transfer to another account or institution) from the ECI account cash and securities with an aggregate value of $25 million dollars as of the date of this Order (inclusive of cash pledged to Banco di Caribe) less any amounts actually paid from time to time to creditors of ECI that are not Debtors; provided, however, that amounts not so reserved may be used to pay intercompany balances owing to ECL (*Id.* ¶ C.ii);
  iii. ECL may use the funds in the ECL account, and any funds transferred to it from the ECI account, for any purpose, including satisfaction of ECL's obligations; provided, however, that for so long as ECL has not depleted the cash and cash equivalents currently held in the ECL account, ECL shall segregate and reserve all cash and securities received from ECI or ECH, if any, in payment of intercompany balances and shall not use such funds to pay any obligations of ECL (*Id.* ¶ C.iii); and
  iv. Parman is entitled to monthly reporting from the CBCS regarding the balances in the bank accounts held by ECL, ECI, and ECH, including amounts segregated in accordance with the Proposed Order. (*Id.* ¶ 10.)

The Proposed Order also authorizes and directs Merrill Lynch to vacate the administrative hold on the Debtors' accounts at Merrill Lynch. (*Id.* ¶ 3.)

7

## II.     LEGAL STANDARD

The Foreign Representative's motion is based on sections 1521(a)(5) and 1521(b) of the Bankruptcy Code. The former provides that the court may entrust the Foreign Representative with the "administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States." 11 U.S.C. § 1521(a)(5). The latter provides that the court may entrust the Foreign Representative with the "distribution of all or part of the debtor's assets located in the United States." 11 U.S.C. § 1521(b). As the Court recently explained:

> The Court's discretionary relief under section 1521 of the Code may either allow the foreign representative to merely administer the debtor's assets in the United States, but require that those assets remain here, or may allow the foreign representative to remove the debtor's assets from the United States. Section 1521(a)(5) entrusts to the foreign representative the 'administration or realization' of the debtor's assets within the United States. . . . It is not to be confused with the optional relief provided by section 1521(b), which allows the Court to 'entrust the distribution' of the debtor's assets within the United States to the foreign representative. This alternative provision allows the debtor's assets to exit the United States for *distribution*.

*In re Agrokor d.d.*, 591 B.R. 163, 188–89 (Bankr. S.D.N.Y. 2018) (internal citations omitted) (emphasis in original); *see also In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009) ("There are two forms of discretionary entrustment a court can order under § 1521. Section 1521(a)(5) permits the court to order entrusting the administration or realization of all or part of the debtor's assets in the United States to the foreign representative. . . . In addition, under § 1521(b), the foreign representative may be entrusted with the distribution of all or part of the debtor's assets located in the United States . . . if the interests of local creditors are sufficiently protected.'') (internal quotation marks and citations omitted).

The Court's authority to grant the requested relief is subject to two conditions: the relief must be "necessary to effectuate the purposes of [chapter 15] and to protect the assets of the

8

debtor"; and the Court must be satisfied that "the interests of creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. §§ 1521(a) and 1522(a).

A determination of sufficient protection "requires a balancing of the respective parties' interests." *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013) (citing *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 784 (S.D. Fla. 2012). This Court has also explained "sufficient protection" as:

> embodying three basic principles: 'the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law.'

*Atlas Shipping*, 404 B.R. at 740 (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005)).

### III. DISCUSSION

The Court finds that the Foreign Representative has satisfied the requirements of sections 1521(a) and 1522(a) because the relief requested in this case is necessary to effectuate the purposes of chapter 15 and to protect the assets of the Debtors, and because the interests of creditors and other interested entities are sufficiently protected by the Proposed Order. Accordingly, under section 1521(b), the Foreign Representative is entrusted with the administration, realization, and distribution of the ECL, ECI, and ECH Merrill Lynch accounts, subject to the conditions in the Proposed Order.[5]

---

[5] To be clear, the relief granted permits the Foreign Representative to have complete access and control of the Merrill Lynch accounts, to trade, liquidate or otherwise alter the securities positions in the accounts, whether the assets in the accounts remain at Merrill Lynch in New York or are transferred elsewhere. The Foreign Representative is also permitted, but not required, to transfer the funds or property in the accounts, and to use the funds in the Debtors' businesses, subject to the agreed provisions for sufficient protection.

The relief requested by the Foreign Representative is clearly necessary to effectuate the purposes of chapter 15 and to protect the Debtors' assets. The Debtors face a pressing liquidity issue. It is anticipated that the Debtors' net negative cash flow will lead to material cash shortfalls as early as January 2019. (Brodie Declaration ¶ 35.) The Debtors forecast that the shortfall will reach $40 million by March 31, 2019. (*Id.*) The bulk of the Debtors' liquid assets are in the Merrill Lynch accounts. Access to these accounts will allow the Debtors to resolve their liquidity issues and remain in operation.

The Court also finds that the interests of creditors and interested entities are sufficiently protected by the Proposed Order. It is undisputed that the funds in the three Merrill Lynch accounts are the property of Debtors ECL, ECI, and ECH. The Debtors intend to use these funds to rehabilitate and finance ECL's insurance business. (Motion ¶ 6(a).) ECL's only creditors are policyholders, employees, suppliers, and—as contingent creditors—reinsurance companies. These parties stand to benefit from ECL's increase in liquidity. While Debtors ECI and ECH have a small number of third-party creditors, they have not objected to the Motion, and the Court is not aware of any threats to their interests. In any case, the agreed provisions for sufficient protection are reasonable and appropriate for the protection of creditors and interested parties.

The only party to object to the Motion is Parman. The parties debate whether Parman, as a shareholder, constitutes an "interested entity" entitled to "sufficient protection" under section 1522(a).[6] But even if Parman does qualify as an interested entity, its interests are sufficiently protected.

---

[6] The Foreign Representative's counsel argues that shareholders are not entitled to sufficient protection under section 1522. In support of the argument, counsel points to the *Guide to Enactment and Interpretation of the UNCITRAL Model Law on Cross-Border Insolvency*, which does not list shareholders as an interested entity. (ECF Doc. # 90 ¶ 7 (citing U.N. Comm'n on Int'l Trade Law, *Guide to Enactment and Interpretation of the UNCITRAL Model Law on Cross-Border Insolvency*, ¶¶ 196-199 U.N. Doc. A/CN.9/442 (1997)).) Parman disagrees. At the Hearing, Parman's counsel claimed that *In re Oi S.A.*, 587 B.R. 253 (Bankr. S.D.N.Y. 2018), stands for the proposition that section 1522(a) should be considered when a shareholder challenges relief sought under section

10

Parman's interests are not jeopardized by the relief requested here. Parman does not claim that it would be insufficiently protected if the Debtors are granted access to the ECL account. In fact, Parman acknowledges that it "has an interest in ECL remaining healthy and paying its obligations." (Objection ¶ 48.) Parman does claim that it will be prejudiced if the Debtors are granted access to the ECI and ECH accounts, however. The Court disagrees primarily for two reasons. First, there is no question that the funds in the ECI and ECH accounts are the property of ECI and ECH, respectively. Second, ECI's and ECH's debts to ECL far exceeds the amount in these accounts. The Foreign Representative intends to use the funds in the ECI and ECH accounts to satisfy their intercompany obligations to ECL. (Motion ¶ 24.) Parman will not be harmed by ECL paying its obligations or by ECH and ECI satisfying their intercompany debts.

Parman nonetheless claims that they will be prejudiced by the Motion. When pressed at the Hearing to explain how Parman was insufficiently protected, Parman's counsel claimed that transfer of the Merrill Lynch funds to Curaçao will incur a 1% repatriation fee. While this may be true, the harm it presents is dwarfed by the benefits such a transfer would provide to ENNIA and the harm that the Debtors would suffer without access to the funds in the Merrill Lynch accounts. A determination of sufficient protection "requires a balancing of the respective parties' interests." *AJW Offshore,* 488 B.R. at 559. A 1% repatriation fee is significantly outweighed by the Debtors' need to address their liquidity issues.[7]

---

1521. The Court need not resolve the issue because the Court concludes that Parman is sufficiently protected by the Proposed Order.

[7] The relief granted by the Court permits, but does not require, the funds in the Merrill Lynch accounts to be returned to Curaçao. The Court assumes that the Debtors' management and the CBCS will decide whether, when, and how much of the funds should be repatriated to Curaçao.

11

Parman also claims that the intercompany debt that ECI owes to ECL has not matured. The CBCS, as permitted by statute, has removed Parman's control of the Debtors in the insurance company rehabilitation proceeding. The CBCS and the Debtors' current management now control decision-making about when and how ECI's liability to ECL should be satisfied.

Finally, Parman encourages the Court to delay a ruling on this matter until certain judicial proceedings in Curaçao are completed. In doing so, Parman attempts to analogize this case to *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96 (Bankr. S.D.N.Y. 2012). In that case, a creditor filed an adversary complaint in a chapter 15 case seeking a declaratory judgment that funds on deposit in an account in the United States are not property of the debtor and therefore are not subject to the automatic stay. *Id.* at 99. The Court found that the account in question included deposits by the debtor and by a non-debtor affiliate of the debtor. *Id.* at 100. The Court stayed the action, but conditioned the stay on the parties engaging with the Mexican court system to resolve various issues. *Id.* at 117-118. In so ruling, the Court stated "[a]t least with respect to the funds belonging to the Non-Debtor Affiliates remaining in the Cash Management Account, the Court concludes that CTIM is sufficiently protected as a temporary matter as long as the funds remain in the United States." *Id.* at 111. Parman hopes for similar relief here. They ask the Court to order that the funds in the Merrill Lynch accounts remain in New York, except to the extent necessary to resolve the Debtors' liquidity needs, and to reserve ruling in this case until after the Curaçao court has resolved the issues before it. (Objection ¶ 48.)

Parman's reliance on *Cozumel Caribe* is misplaced. In *Cozumel Caribe*, the Court only ordered that the funds belonging to a non-debtor affiliate remain in the United States. In this case, the parties agree that the funds in the Merrill Lynch accounts are entirely owned by the

Debtors.  Accordingly, *Cozumel Caribe*, and the relief provided therein, is entirely inapplicable to this case.

## IV. CONCLUSION

For the reasons explained above, the Motion is **GRANTED**.  A separate Order will be entered.

Dated:   January 29, 2019
         New York, New York

                                     ____*Martin Glenn*_____
                                         MARTIN GLENN
                                  United States Bankruptcy Judge